## WAL–MART STORES, INC., Appellant,

v.

## Tanja KEE, Appellee.

### No. 12–86–0259–CV.

Court of Appeals of Texas,
Tyler.

Nov. 24, 1987.

Rehearing Denied Feb. 4, 1988.

Mike Hatchell, Ramey Firm, Tyler, for appellant.

Jerry Calhoon, Palestine, for appellee.

SUMMERS, Chief Justice.

This is an appeal from a judgment awarding actual and exemplary damages in a suit alleging a discriminatory firing of an employee in violation of Tex.Rev.Civ.Stat. Ann. art. 8307c (Vernon Supp.1987).[1] We affirm.

A jury found that plaintiff/appellee Tanja Kee (hereinafter Kee) was fired by defendant/appellant Wal–Mart Stores, Inc. (hereinafter Wal–Mart) in response to a workers' compensation claim and awarded actual damages of $4,500. Further, the jury found that Wal–Mart acted with "malice" and awarded $25,000 in exemplary damages. The trial court rendered judgment in accordance with the jury's verdict. Wal–Mart challenges the propriety of an award of exemplary damages under article 8307c, the finding of malice, and the amount of exemplary damages.

Kee was an employee of Wal–Mart Stores in Palestine, Texas. On October 19, 1983, she sustained an on-the-job back injury. Kee was hospitalized for ten days and was off work recuperating for a lengthy period of time following that hospitalization. Lowell Milbrandt, Wal–Mart's personnel manager, spoke with Kee several times during her hospitalization and recuperation to wish her well and to urge her to return to employment as soon as possible.

---

**1.** All reference to articles are to the Texas Revised Civil Statutes Annotated.

While recuperating, Kee filed a workers' compensation claim. During the pendency of the claim, Kee received a partial release to return to work on light duty. When she appeared for work, she was informed that no light duty positions were available and she could stay off work collecting weekly compensation.

Kee settled her compensation claim for a lump sum of $7,500 and one year's free medical attention. Six days later she reported to Wal–Mart with a full release ready to return to work. Milbrandt called Kee into his office and informed her that she was fired. Milbrandt acknowledged in testimony that at least part of the reason for the firing was the workers' compensation settlement and the subsequent full release for work. Kee contends that during the conversation in Milbrandt's office, he made it clear that the settlement was the reason for her firing. Kee then instituted this action against her former employer for recovery of actual and exemplary damages alleging a discriminatory firing under article 8307c.

■ Wal–Mart's first point of error contends that exemplary damages are not recoverable in an action under article 8307c. The Texas Supreme Court recently held that exemplary damages are recoverable under this statutory cause of action. *Azar Nut Company v. Caille*, 734 S.W.2d 667 (Tex.1987). The first point of error is overruled.

■ In its second point of error Wal–Mart asserts that the trial court erred in overruling its motion for new trial, because the jury's answer to Special Issue No. 3 concerning the finding of "malice" is not supported by factually sufficient evidence or is against the great weight and preponderance of the evidence.

Where the factual sufficiency of a jury finding is challenged, the whole record is examined to determine whether there is some evidence to support the jury's finding and whether considering all the evidence the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

A review of the entire record reveals that there is evidence of probative value to support the jury's finding of malice, and furthermore shows that the jury's finding of malice is not so against the great weight and preponderance of the evidence as to be manifestly unjust.

"Malice" was defined in the trial court's charge as:

The intentional doing of a wrongful act without just cause or excuse; that is, if a wrongful act is intentionally done without just cause or excuse for believing it to be right or legal, or done with conscious disregard to the rights of others, then such act is willfully or maliciously done. Willfulness and intent may be inferred by the actions and conduct of the wrongdoer.

Tanja Kee testified as follows regarding the meeting with Milbrandt at which she was fired:

Q. Can you tell me—At the time you went into his office, did he ask you about whether you had been released to return to work?

A. Yes, sir.

Q. What did you tell him?

A. He asked me if I had a full release. I told him I did. I had it in my hand.

Q. What did he say when you showed him you had a full release to return to work?

A. He took the release from me. I told him I wanted my release, and he took a copy.

. . . .

Q. Up until that time, can you tell us whether or not you felt like, based on the representations he had been making to you, that you were going to be working that afternoon?

A. Yes, sir.

Q. But when he came back from the copy machine, can you tell us the substance of what he said then?

A. Yes, sir. He come—I was sitting in a chair. He sat down behind his desk and looked at me and kind of laughed and told me he could not let me return to work that I was fired, and I asked

him if he would write a written statement to that effect, and he said no.

Q. Did he tell you when he told you that he would not let you return to work that you were fired, after laughing at you, did he give you any reason as to why?

A. Yes, sir.

Q. What was that?

A. That I was a bad risk to the insurance company.

Q. Can you state whether or not he mentioned your cash settlement you had received?

A. Yes, sir. He said I got a lump sum of money, a cash settlement from workman's comp., and I was a bad risk to their insurance company.

Milbrandt also acknowledged at trial that at least part of the reason he chose to fire Kee was his "reservation" about what he termed "her miracle cure within four days from a settlement to a full release." Firings on the basis of workers' compensation claims or settlements are precisely what article 8307c was intended to prohibit.

The evidence shows that prior to trial Milbrandt gave at least three completely different explanations for the firing. In doing so, Milbrandt cast serious doubt on his truthfulness with regard to the entire matter. Further, Milbrandt admittedly assured Kee on a number of occasions while she was in the hospital and home recuperating that he would like her well and back to work. However, after the settlement and firing, in filling out "exit-interview" forms, Milbrandt rated Kee's performance unsatisfactory and indicated that she would not be rehired. There had been no previous complaints concerning her performance. This dramatic change in outlook can most reasonably be attributed to animus arising out of the workers' compensation settlement. Milbrandt acknowledged in his testimony that he took all these actions knowing Kee's Wal–Mart employment was her only means of supporting herself and her minor child.

Wal–Mart emphasizes the "absence of a history of confrontation" between the parties, "the absence of abusive language,"

and the "limited time period" of the alleged malice as factors to be considered in weighing the evidence. We conclude, however, that these factors do little to cast doubt on the jury's finding of malice. The second point of error is overruled.

■ The third and final point of error contends that "the trial court erred in overruling defendant's motion for new trial, because the jury's answer to Special Issue No. 4 is excessive or is against the great weight and overwhelming preponderance of the evidence."

In *Alamo National Bank, et al. v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981), the Supreme Court approved the standards applied by the Court of Civil Appeals in reviewing an award of exemplary damages for excessiveness. *Kraus v. Alamo National Bank of San Antonio,* 586 S.W.2d 202, 207–08 (Tex.Civ.App.—Waco 1979).

These standards are:

While the amount of exemplary damages should be reasonably proportional to the actual damages, no set rule or ratio can be laid down, and such amount must depend upon the facts in the particular case. Such amount depends, among other things, upon the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety.

... And the question of the measure of exemplary damages comes under the general rule that, where the law furnishes no legal measure of damages and they are unliquidated, the amount to be awarded rests largely in the discretion of the jury; and unless the award is so large as to indicate that it is a result of passion, prejudice, or that the evidence has been disregarded, the verdict of the jury is conclusive and will not be set aside as excessive, either by the trial court or on appeal....

*See also Chasewood Construction Company v. Rico,* 696 S.W.2d 439, 448 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

Under the applicable standards cited above, we conclude that the jury's award of $25,000 as exemplary damages was not so large as to justify a conclusion that it was the result of passion, prejudice or a disregard of the evidence. Furthermore, considering all the evidence in the case, we conclude that the jury's award for exemplary damages was not so against the great weight and preponderance of the evidence as to be manifestly unjust. The point is overruled.

The judgment of the trial court is affirmed.