**SANDY INTERNATIONAL, INC., Appellant,**

v.

**HANSEL & GRETEL CHILDREN'S SHOP, INC., Appellee.**

No. 05–89–00022–CV.

Court of Appeals of Texas, Dallas.

Aug. 4, 1989.

Rehearing Denied Sept. 8, 1989.

Robert H. Osburn, Dallas, for appellant.

Paul Brumley, DeSoto, for appellee.

Before McCLUNG, ROWE and BURNETT, JJ.

ROWE, Justice.

Appellee Hansel & Gretel Children's Shop, Inc. [H & G] sued appellant Sandy International, Inc. [Sandy] to enjoin infringement of two trademarks and a trade name. After a jury trial, the trial court granted a permanent injunction in favor of H & G. In eight points of error, Sandy complains that: 1) the trial court lacked subject matter jurisdiction over this cause; 2) there was no evidence or insufficient evidence as to the actual trademarks; 3) there was no evidence or insufficient evidence that H & G acquired the trademark by assignment; 4) the evidence established as a matter of law that the trade name was not owned by H & G; 5) the trial court erred in granting an injunction regarding use of the name "Hansel & Gretel" based upon a trademark registration; 6) the trial court erred in awarding attorney fees to H & G; 7) the trial court erred in proceeding to trial; and 8) there was insufficient evidence that the names used were so substantially similar that there was a likelihood of confusion or deception. For the reasons discussed below, we reverse the trial court's judgment, dissolve the injunction, and render judgment that H & G take nothing.

*Background*

In 1974, Linda Thorne purchased a children's clothing store in DeSoto, Texas, which she operated as a sole proprietorship under the name Hansel & Gretel Children's Shop. In connection with this business, Linda and her husband Roy registered two trademarks under Texas trademark law. The certificate of registration for the first, dated December 27, 1978, describes the mark as "Hansel and Gretel above a small gingerbread house" [hereinafter trademark no. 35,555]. The certificate of registration for the second, dated January 11, 1979, describes the mark as "Hansel and Gretel" [hereinafter trademark no. 35,576]. In 1980, the Thornes incorporated the business as Hansel & Gretel Children's Shop, Inc. The Thornes then executed a written assignment of trademark no. 35,555 to the corporation. Linda Thorne also testified at trial that both trademarks became assets of the corporation in 1980.

In 1985, the Thornes sold the corporation to Byoung Soo Moon and Mary Moon. Although the record is unclear as to the form of this transaction, the corporation apparently was not dissolved; the Moons merely assumed full control over the corporation and its assets. The Moons continued to operate the business as a children's clothing store under the name Hansel and Gretel Children's Shop. Shortly before trial, Linda Thorne executed a written assignment of the trade name "Hansel and Gretel Children's Shop" to the Moons.

In 1986, Sandy operated a children's clothing store in Grapevine, Texas, under the name Hansel and Gretel Children's Boutique. In connection with this store, Sandy developed a logo with the store's name above a gingerbread house. The idea for this logo came from a book containing the Grimm's fairy tale. In early 1988, Sandy moved its store to Irving, Texas, and renamed it Hansel and Gretel Boutique. At about the same time, the Moons discovered the existence of Sandy's store and sent a letter dated March 28, 1988, demanding that Sandy cease using the name "Hansel and Gretel." When Sandy failed to comply, H & G instituted this lawsuit for infringement of the two registered trademarks and for interference with the name "Hansel and Gretel."

At the close of evidence, the trial court submitted only three questions to the jury. Those questions and the jury's answers are as follows:

QUESTION NO. 1

Do you find from a preponderance of the evidence that Defendant used a mark in connection with the sale of its goods which was likely to deceive or confuse the public or cause mistake by the public as to the source or origin of goods sold by Plaintiff?

Answer "We do" or "We do not"

ANSWER: We do.

QUESTION NO. 2

Do you find from a preponderance of the evidence that the trademarks in Plaintiff's Exhibit Nos. 5 and 6 are registered with the Secretary of State for the State of Texas?

Answer "We do" or "We do not"

ANSWER: We do.

QUESTION NO. 3

Do you find from a preponderance of the evidence that the trademarks in Plaintiff's Exhibit Nos. 5 and 6 are owned by the Plaintiff?

Answer "We do" or "We do not"

ANSWER: We do.

By the agreement of the parties, the issue of attorney fees was submitted to the trial court rather than to the jury. The trial court did not submit any questions with respect to the common law tort of unfair competition; however, H & G has not complained on appeal of this failure.

Based upon the jury's findings, the trial court permanently enjoined Sandy from using any name in connection with its children's clothing business which incorporates the trademark "Hansel and Gretel" alone or in conjunction with any other words, phrases, or symbols. The trial court's judgment specifies certain measures for Sandy to take in order to comply with the injunction. In addition, the trial court granted a declaratory judgment that H & G has a superior right to the trademark "Hansel & Gretel" and that Sandy does not have a right to use such trademark in the sale of children's clothing. The trial court also awarded judgment in favor of H & G for $16,800 attorney fees. The trial court did not explicitly grant any relief with respect to trademark no. 35,555; but H & G has not complained on appeal of this omission.

*Jurisdiction*

This lawsuit was tried in Dallas County Court at Law No. 2. In the first point of error, Sandy asserts that such court lacked subject matter jurisdiction over this cause. Sandy relies upon section 16.26(b) of the Business and Commerce Code which states:

A registrant may sue for damages and to enjoin an infringement proscribed by Subsection (a) of this section in a district court having venue.

TEX.BUS. & COM.CODE ANN. § 16.26(b) (Vernon 1987). Sandy argues that this section expressly reserves the right to issue injunctions in trademark cases to the district courts.

In response, H & G claims that the jurisdiction of the trial court is governed by section 25.0592 of the Government Code which provides:

(a) In addition to the jurisdiction provided by Section 25.0003 and other law, a county court at law in Dallas County has original and concurrent jurisdiction with the district court in:

(1) civil cases in which the matter in controversy exceeds $500, excluding interest, but does not exceed $50,000, excluding interest, statutory damages and penalties, attorney's fees, and costs....

TEX.GOV'T CODE ANN. § 25.0592(a)(1) (Vernon 1988). H & G asserts that this section grants the trial court concurrent jurisdiction with the district courts over civil matters without expressly reserving any particular matters exclusively to the district courts. Thus, H & G urges that the trial court did have jurisdiction over this lawsuit.

We have found no authorities addressing whether section 16.26(b) of the Business and Commerce Code limits jurisdiction over trademark infringement suits exclusively to the district courts. Likewise, we have discovered no authorities construing substantially similar language in various other statutes.[1] Thus, this issue appears to be one of first impression.

---

1. *Cf.* TEX.AGRIC.CODE ANN. § 14.216(a) (Vernon 1982) (revocation of certificate of public warehouse); TEX.AGRIC.CODE ANN. § 78.044(c) (Vernon 1982) (mandatory injunc-

tion for noxious weed control); TEX.BUS. & COM.CODE ANN. § 15.21(a)(1) (Vernon 1987) (damages and injunction for antitrust violations); TEX.BUS. & COM.CODE ANN.

■ In construing statutory provisions, our primary duty is to ascertain and give effect to the intent of the legislature. *E.g.,* *State v. Terrell,* 588 S.W.2d 784, 786 (Tex. 1979); *Calvert v. Texas Pipe Line Co.,* 517 S.W.2d 777, 781 (Tex.1974); *Anderson v. Penix,* 138 Tex. 596, 602, 161 S.W.2d 455, 459 (1942). In ascertaining this intent, we must examine the statute as a whole, and not just one word or phrase therein. *E.g.,* *Seay v. Hall,* 677 S.W.2d 19, 25 (Tex.1984); *Terrell,* 588 S.W.2d at 786; *Calvert,* 517 S.W.2d at 786. We must look to the plain language of the statute itself and may not go beyond such language. *See, e.g., Seay,* 677 S.W.2d at 25; *Terrell,* 588 S.W.2d at 786; *Citizens Bank v. First State Bank,* 580 S.W.2d 344, 348 (Tex.1979). With these fundamental principles in mind, we turn to the statutes at issue herein.

Chapter 16 of the Business and Commerce Code is the most recent in a long line of statutes governing trademarks and service marks in Texas. The first such statute, enacted in 1895, provided procedures for registering labels and trademarks with the Secretary of State. Law of Apr. 29, 1895, ch. 81, § 4, 1895 Tex.Gen.Laws 108–09, 10 H. GAMMEL, LAWS OF TEXAS 838–39 (1895) (subsequently designated as TEX.REV.CIV.STAT.ANN. arts. 850, 851 (Vernon 1953) (repealed 1962)). Any person counterfeiting or imitating such a trademark was subject to a fine of $25 to $100. *Id.* § 1. In addition, the owner of the trademark could sue to enjoin "the wrongful manufacture, use, display, or sale" of any such trademark. *Id.* § 3. The statute did not specifically mention district courts but rather referred to "any court having jurisdiction." *Id.* § 3; TEX.REV.

CIV.STAT.ANN. art. 850 (Vernon 1953) (repealed 1962).

In 1962, the legislature comprehensively revised and consolidated the various trademark statutes adopted since 1895. *See* TEX.REV.CIV.STAT.ANN. art. 851–C (Vernon 1964) (repealed 1967). The 1962 act continued the concept of registration with the Secretary of State. *Id.* §§ 3–4. It also carried forward the right of the registrant to sue to enjoin an infringement of the trademark as follows:

> A registrant under this Act may proceed by suit in any District Court having venue to enjoin any act for which liability may be imposed under Section 15 hereof, and any such District Court shall grant injunctions to restrain such acts....

*Id.* § 16. This was the first time that the legislature specifically mentioned the district court in the provision concerning enforcement of the trademark statute.

In 1967, the legislature enacted Chapter 16 of the Business and Commerce Code, repealing article 851–C. Chapter 16 continues the overall scheme of the former article in most respects. Section 16.26 codifies the enforcement provision. Subsection (a) defines what acts constitute an infringement of a registered mark. Subsection (b) gives the registrant the right to sue to enjoin an infringement in language similar to the above quoted language of the repealed article. Subsection (c) sets forth the remedies; and subsection (d) limits the recoverable damages. From the language of the statute as a whole, we conclude that the legislature's intent was to provide a registrant with a statutory means of enforcing its right to the exclusive use of its trademark

§ 16.26(b) (Vernon 1987) (cancellation of trademark registration for fraud); TEX.LOCAL GOV'T CODE ANN. § 234.005(a) (Vernon 1988) (suit to enjoin outdoor lighting near observatories); TEX.LOCAL GOV'T CODE ANN. § 243.008(a) (Vernon 1988) (suit to enjoin sexually oriented businesses); TEX.WATER CODE ANN. § 11.093(a) (Vernon 1988) (suit to abate operation of waterworks as public nuisance); TEX.REV.CIV.STAT.ANN. art. 342–805 (Vernon Supp.1989) (suit to enjoin liquidation of bank); TEX.REV.CIV.STAT.ANN. art. 342–811 (Vernon 1973) (suit upon claim against bank in liquidation); TEX.REV.CIV.STAT.ANN. art. 2461–

10.02(c) (Vernon Supp.1989) (suit to enjoin liquidation of credit union); TEX.REV.CIV.STAT. ANN. art. 4476–5g, § 12 (Vernon Supp.1989) (suit to enjoin operation of food service establishment without permit); TEX.REV.CIV.STAT. ANN. art. 5069–51.17(f) (Vernon 1987) (suit to enjoin violation of Texas Pawnshop Act); TEX. REV.CIV.STAT.ANN. art. 6252–16a, § 3(c) (Vernon Supp.1989) (suit by public employee for retaliatory discharge); TEX.REV.CIV.STAT. ANN. art. 8451a, § 38 (Vernon Supp.1989) (suit to enjoin violation of Cosmetology Regulatory Act).

in a civil court. We find nothing in the language of the statute which indicates any intent to expressly limit jurisdiction to the district court.

On the other hand, Chapter 25 of the Government Code comprehensively delineates the jurisdiction of the statutory county courts in this state. In this respect, section 25.0592 of the Government Code plainly reflects an intent to give the county courts at law in Dallas County concurrent jurisdiction with the district court in civil cases where the amount in controversy is within the specified limits. While certain sections of Chapter 25 differentiate family law cases and probate cases from civil cases generally, no section makes such a distinction with regard to trademark infringement cases. Thus, we find no intent to exclude trademark infringement cases from the broad grant of concurrent jurisdiction with the district court in civil cases within the imposed limits for amount in controversy. We conclude, therefore, that Dallas County Court at Law No. 2 had subject matter jurisdiction over this cause. We overrule Sandy's first point of error.

### Evidence of Assignments

In its third point of error, Sandy contends that there was no evidence that H & G ever acquired trademark no. 35,576 by proper assignment. Acquisition by proper assignment is critical to the disposition of this case because in order to obtain the statutory relief it sought, H & G had to establish that it was a "registrant" within the meaning of the trademark statute. *See* TEX.BUS. & COM.CODE ANN. § 16.26(b) (Vernon 1987). A "registrant" means the person to whom a trademark registration has been issued or an assignee of such person. *See id.* § 16.01(a)(3). Under the trademark statute, however, an assignment of a registered trademark must be made by a duly executed written instrument. *Id.* § 16.17(b). Thus, we must determine whether the evidence would support a finding that the Thornes assigned the trademark to H & G by a duly executed written instrument.

In analyzing this no evidence point, we must determine whether there is more than a scintilla of evidence to support the jury's finding. *See Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). In making this determination, we must consider only the evidence favorable to such finding and disregard all evidence to the contrary. *See Stafford,* 726 S.W.2d at 16; *In re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). If the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of this fact, we must overrule Sandy's no evidence point. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983).

The only evidence in the record as to an assignment of trademark no. 35,576 is Linda Thorne's testimony that both trademarks became assets of the corporation when it was incorporated and that they were eventually sold with the corporation to the Moons. Although H & G introduced a written assignment of trademark no. 35,-555, it did not introduce a written assignment of trademark no. 35,576. At trial, Sandy moved for an instructed verdict and objected to the submission of the three jury questions on the ground that there was no evidence that the Thornes had assigned the trademarks to H & G.

We find that this evidence amounts to no more than a scintilla of evidence that trademark no. 35,576 was ever properly assigned to H & G. Although Linda Thorne testified that both trademarks "became" assets of the corporation, we decline to subscribe to such testimony an interpretation that they "became" assets by means of a duly executed written instrument. We further conclude that the mere fact that one trademark was assigned in writing is no proof whatsoever that the other was assigned in writing. In the absence of evidence of a written assignment, H & G has failed to demonstrate its standing to seek an injunction with respect to trademark no. 35,576. We sustain Sandy's third point of error.

Because of our disposition of the third point of error, we need not address

the remaining points of error. As we have previously noted, the trial court granted an injunction only with respect to the trademark "Hansel and Gretel," and H & G has not complained to this Court of the omission of an injunction with respect to trademark no. 35,555. Similarly, H & G has not complained on appeal of the trial court's failure to submit any questions to the jury with respect to its common law claim for unfair competition resulting from interference with its trade name. In the absence of a cross point properly assigning such complaints as error, we cannot reverse the trial court's judgment with respect to these two claims. *See Central Educ. Agency v. Burke,* 711 S.W.2d 7, 8 (Tex.1986); *State Bd. of Ins. v. Westland Film Indus.,* 705 S.W.2d 695, 696 (Tex.1986). Accordingly, we reverse the trial court's judgment, dissolve the injunction, and render judgment that H & G take nothing.