**CONTINENTAL COFFEE PRODUCTS COMPANY and Alan D. Duff, Appellants,**

v.

**Juanita CAZAREZ, Appellee.**

**No. 14–94–00101–CV.**

Court of Appeals of Texas, Houston (14 Dist.).

June 15, 1995.

Rehearing Overruled July 20, 1995.

A. Martin Wickliff, Jr., Barbara Johnson, Houston, for appellants.

Donna Roth, Thomas Thurlow, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## MAJORITY OPINION

AMIDEI, Justice.

This appeal is from a judgment for damages for retaliatory discharge after a bench trial. Claiming she was discharged in retaliation for filing a workers' compensation claim, appellee, Juanita Cazarez ("Cazarez"), brought suit against appellants, her employer, Continental Coffee Products Company ("Continental"), and its employment manager, Alan D. Duff ("Duff"), under the Texas Anti–Retaliation Law. TEX.LAB.CODE ANN. § 451.001–.003 (Vernon Pamph.1995). From a judgment awarding actual and exemplary damages, appellants appeal in five points of error, claiming the trial court lacked jurisdiction, the evidence was legally and factually insufficient to support the judgment, and the trial court improperly excluded evidence. We affirm.

## FACTUAL BACKGROUND

Cazarez was employed as a production assistant performing primarily janitorial duties for Continental. On April 8, 1991, she sustained a work-related ankle injury, requiring her to be off from work. Cazarez filed a worker's compensation claim and Continental's compensation carrier paid her medical bills and weekly benefits. On September 30, 1991, Cazarez's physician, Dr. Brian Parsley, indicated that she could return to work on October 28, 1991. (After Cazarez's termination, Dr. Parsley amended his report to show a new release date of November 18, 1991.) On October 28, Cazarez phoned Maizie Villarreal, a clerk working under Duff, and said that she had the flu and was awaiting ankle supports prescribed by her doctor. Duff testified he called Cazarez on October 30, and she told him she would probably be at work on Friday, November 1 or Monday, November 4, at the latest. Cazarez did not phone in or report to work between November 1 and November 7.

On November 8, 1991, Duff sent Cazarez a letter notifying her that she was terminated for violation of the company's 3–day No Call/No Show Rule. This rule is set out in Article 9, Section 3(e) of Continental's collective bargaining agreement with the union, which provides that an employee's rights terminate when the employee is absent from work for three consecutive working days without notifying the supervisor or department manager. The plant work rules also provide that "[a]bsence of three consecutive working days without properly notifying Management" is considered as a "Voluntary Quit." After she was terminated, and her request for reinstatement was denied, Cazarez filed this suit, alleging damages under former article 8307c of the Workers' Compensation Act, now codified without substantive change at Sections 451.001–.003 of the Labor Code. TEX.LAB.CODE ANN. §§ 451.001–.003 (Vernon Pamph.1995). This statute, referred to as the Anti–Retaliation

Law, specifically prohibits discharging or otherwise discriminating against an employee for filing a workers' compensation claim in good faith or hiring legal representation in such a claim. TEX.LAB.CODE ANN. § 451.001 (Vernon Pamph.1995). After a bench trial resulting in a judgment awarding Cazarez actual damages in the amount of $150,000 and exemplary damages in the amount of $500,000, Continental and Duff bring this appeal.

## JURISDICTION

■ In appellants' first point of error, they contend the trial court had no subject matter jurisdiction over this suit. Whether a trial court had subject matter jurisdiction is a question of law for our review de novo. *North Alamo Water Supply Corp. v. Texas Dep't of Health*, 839 S.W.2d 455, 457 (Tex. App.—Austin 1992, writ denied).

■ Appellants assert two reasons why the trial court, a statutory county court, lacked subject matter jurisdiction. First, they contend that district courts have exclusive jurisdiction to decide cases of retaliatory discharge based on the language of both the Workers' Compensation Act and its recodification in the Labor Code. They also argue that Cazarez's pleadings alleged damages in excess of the maximum jurisdictional amount for statutory county courts.

The power of Harris County statutory county courts to hear suits brought under the Anti–Retaliation Law presents a question of first impression. Article 8307c, as originally enacted, provided in section three, as follows: "The district courts of the State of Texas shall have jurisdiction, for cause shown, to restrain violations of this Act." Act of April 22, 1971, 62nd Leg., R.S., ch. 115, 1971 Tex. Gen. Laws 884, 885 (formerly codified as TEX.REV.CIV.STAT.ANN. art. 8307c). After recodification of this provision, shortly before trial of this case, it now reads: "A district court may restrain, for cause shown, a violation of Section 451.001." Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex.Gen. Laws 987, 1235–36 (now codified as

TEX.LAB.CODE ANN. § 451.003). Appellants assert that this language gives the district courts exclusive jurisdiction. They also rely on language in *Azar Nut Co. v. Caille*, 734 S.W.2d 667, 669 (Tex.1987), which states the statute "specifically empowers the district courts of this state to 'restrain violations of the Act.'" This language does not aid in our determination because the supreme court did not use this language in addressing a jurisdictional question, but instead made it part of its analysis in deciding the propriety of punitive damages in retaliatory discharge cases. *See id.* The court determined that the threat of punitive damages would be likely to restrain bad faith employers, in accordance with the purposes of the statute, from wrongfully terminating employees. *Id.*

Appellants also refer us to *McGregor v. Clawson* for the general principle that where a statute creates a right and provides a remedy for its enforcement, the remedy is exclusive, and where it confers jurisdiction upon a particular court, that jurisdiction is exclusive. 506 S.W.2d 922, 928 (Tex.Civ. App.—Waco 1974, no writ), citing *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084, 1087 (1926). The statutory provisions are mandatory and must be complied with in all respects. *Id.* Appellants contend that the legislature intended the district courts to have exclusive jurisdiction over cases brought under the Anti–Retaliation Law because it created a statutory right. Yet, both *McGregor* and *Mingus* are not directly on point because they dealt with statutes containing mandatory venue provisions. *McGregor*, 506 S.W.2d at 928 (venue for disbarment suit is in the county of the defendant's residence); *Mingus*, 285 S.W. at 1087 (suit to set aside workman's compensation award must be brought in the county where the injury occurred).

The general grant of jurisdiction for statutory county courts is found in section 25.003 of the Government Code.[1] Section (c) provides in relevant part:

---

[1] The Texas Constitution governs the jurisdiction of the district courts. Article V, Section 8 provides in relevant part:
District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body.

(c) In addition to other jurisdiction provided by law, a statutory county court exercising civil jurisdiction concurrent with the constitutional jurisdiction of the county court has concurrent jurisdiction with the district court in:

(1) civil cases in which the matter in controversy exceeds $500 but does not exceed $100,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition; and

(2) appeals of final rulings and decisions of the Texas Workers' Compensation Commission, regardless of the amount in controversy.

TEX.GOV'T CODE ANN. § 25.003(c) (Vernon Supp.1995).

In addition, the specific jurisdictional provisions for Harris County Civil Courts at Law state in relevant part:

(a) A county civil court at law in Harris County has jurisdiction over all civil matters and causes, original and appellate, prescribed by law for county courts, but does not have the jurisdiction of a probate court. A county civil court at law has jurisdiction in appeals of civil cases from justice courts in Harris County.

[ (b) Repealed by Act of June 16, 1991, 72nd Leg., R.S., ch. 746, § 70, 1991 Tex. Gen. Laws 2639.]

(c) A county civil court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory and inverse, regardless of the amount in controversy. In addition to other jurisdiction provided by law, a county civil court at law has jurisdiction to:

(1) decide the issue of title to real or personal property;

(2) hear a suit to recover damages for slander or defamation of character;

(3) hear a suit for enforcement of a lien on real property;

(4) hear a suit for the forfeiture of a corporate charter;

(5) hear a suit for the trial of the right to property valued at $200 or more that has been levied on under a writ of execution, sequestration, or attachment; and

(6) hear a suit for the recovery of real property.

TEX.GOV'T CODE ANN. § 25.1032 (Vernon 1988). Thus, there is no express grant or exclusion of jurisdiction over retaliatory discharge suits. Chapter 25 of the Government Code comprehensively delineates the jurisdiction of the statutory county courts in this state. While certain sections of Chapter 25 differentiate family law cases and probate cases from civil cases generally, no section makes such a distinction for retaliatory discharge cases. We note that the statute governing county courts in Harris County differs from some other counties where the jurisdictional statutes provide that statutory county courts have the same jurisdiction as district courts, with any exceptions to that jurisdiction specifically listed in the statute. *See, e.g.,* TEX.GOV'T CODE ANN. § 25.0732 (Vernon 1988 & Supp.1995).[2]

■ Contrary to appellants' assertion, we find nothing granting *exclusive* jurisdiction to the district courts. The general statutory county court jurisdictional grant provides that county courts at law have "concurrent jurisdiction with the district court" as long as the amount in controversy falls within the

TEX. CONST. Art. V, § 8. *See also* TEX.GOV'T CODE ANN. § 24.007 (Vernon 1988). In addition, Article V, Section 1 provides, in part:
The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto.
TEX. CONST. Art. V, § 1.

2. The statute governing El Paso County courts at law states in relevant part:
(a) In addition to the jurisdiction provided by Section 25.003 and other law, and except as limited by Subsection (b), a county court at law in El Paso County has the jurisdiction provided by the constitution and by general law for district courts.
(b) A county court at law does not have jurisdiction of:
(1) felony cases, except as otherwise provided by law;
(2) misdemeanors involving official misconduct; or
(3) contested elections;
TEX.GOV'T CODE ANN. § 25.0732(a) & (b) (Vernon 1988 & Supp.1995).

jurisdictional dollar limits of statutory county courts. The statute does not expressly reserve any particular matters exclusively to the district courts. The statutory county courts clearly have jurisdiction to hear other workers compensation matters. We see no policy reason why the legislature would have intended to exclude retaliatory discharge suits from the county court's jurisdiction. The purpose of former article 8307c is "to protect persons who are entitled to benefits under the Worker's Compensation Law and to prevent them from being discharged by reason of taking steps to collect such benefits." *Carnation Co. v. Borner*, 610 S.W.2d 450, 453 (Tex.1980) (quoting *Texas Steel Co. v. Douglas*, 533 S.W.2d 111, 115 (Tex.Civ. App.—Fort Worth 1976, writ ref'd n.r.e.)). This policy can only be aided by allowing litigants additional access to statutory county courts.

We disagree with appellants' contention that the specific reference in the general county court jurisdictional statute to appeals from Commission awards means that the legislature would have specifically listed anti-retaliation claims had it intended for them to be within the county courts' jurisdiction. From a plain reading of the statute, it appears to this court that the legislature added the section on Commission appeals so as to broaden concurrent jurisdiction of the county courts to include *all* appeals from Commission decisions, regardless of amount, whereas other civil cases are restricted as to the amount in controversy.

In *Sandy Internat'l, Inc. v. Hansel & Gretel Children's Shop, Inc.*, 775 S.W.2d 802 (Tex.App.—Dallas 1989, no writ), the Dallas court interpreted a statute worded similarly to former article 8307c. The Dallas court held the county court at law had concurrent jurisdiction with the district court, within the imposed limits for amounts in controversy, to hear a trademark infringement suit. *Id.* at 806. Section 16.26(b) of the Business and Commerce Code governed the suit and provided in part that "[a] registrant may sue for damages and to enjoin an infringement proscribed by Subsection (a) of this section in a district court having venue." TEX.BUS. & COM.CODE ANN. § 16.26(b) (Vernon 1987).

The jurisdictional grant for Dallas County statutory county courts provided that they had original and concurrent jurisdiction with the district court in "civil cases in which the matter in controversy exceeds $500, excluding interest, but does not exceed $50,000, excluding interest, statutory damages and penalties, attorney's fees, and costs...." Act of May 1, 1987, 70th Leg., R.S., ch. 148, § 4.01, 1987 Tex. Gen. Laws 611, 635–36, formerly codified at TEX. GOV'T CODE ANN. § 25.0592(a)(1) [repealed by Act of June 16, 1991, 72nd Leg., R.S., ch. 746, § 70, 1991 Tex. Gen. Laws 2639]. The appellate court reviewed the legislative history of section 16.26(b), and found nothing in the statute indicating any legislative intent to expressly limit jurisdiction to the district court. *Sandy Internat'l*, 775 S.W.2d at 806. The court accepted appellees' reasoning that the trial court had jurisdiction because the legislature granted it concurrent jurisdiction with the district court over civil matters, without expressly reserving any particular matters exclusively to the district courts. *Id.* at 804.

We also find no intent to exclude retaliatory discharge cases from the broad grant of concurrent jurisdiction with the district court in civil cases within the imposed limits for amount in controversy. Therefore, the trial court in this case had jurisdiction as long as the amount in controversy is within the court's limit.

■ The amount in controversy is determined by plaintiff's petition. *Richardson v. First Nat'l Life Ins. Co.*, 419 S.W.2d 836, 839 (Tex.1967). In her original petition, Cazarez asked for actual damages in the amount of $100,000, an amount within the trial court's jurisdictional maximum. Thus, the county court acquired jurisdiction over the case. Cazarez's First and Second Amended Petitions asked for $250,000 in actual damages, alleging the increase was due to the passage of time. Appellants filed a plea to the jurisdiction, which the trial court denied.

■■ Where jurisdiction is properly acquired, no subsequent fact or event in the case should defeat that jurisdiction when the original suit is within the jurisdictional limits and subsequent amendments seek only addi-

tional damages accruing due to the passage of time. *Mr. W. Fireworks, Inc. v. Mitchell*, 622 S.W.2d 576, 577 (Tex.1981); *Flynt v. Garcia*, 587 S.W.2d 109, 109–10 (Tex.1979) (per curiam); *Underhill v. Underhill*, 614 S.W.2d 178, 180 (Tex.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). In the absence of pleading and proof that the allegations in the plaintiff's original petition were made fraudulently or in bad faith, the fact that the amended petition alleges damages in excess of the court's jurisdictional limits does not deprive the court of its jurisdiction over the case. *Cantu v. J. Weingarten's, Inc.*, 616 S.W.2d 290, 291 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

■ While appellants did plead that Cazarez filed her original petition in bad faith or fraudulently, appellants did not provide any evidence to support their claims. They alleged that only seven months elapsed before Cazarez amended her petition the first time. Then, on the second amendment, she dropped her claim for intentional infliction of emotional distress, but kept the damages claimed at $250,000. Appellants' only argument is that it is clear on the face of the various petitions that Cazarez acted in bad faith. We disagree. We must presume in favor of jurisdiction unless lack of jurisdiction appears on the face of the petition. *Peek v. Equipment Service Co.*, 779 S.W.2d 802, 804 (Tex.1989). Without proof of bad faith, the trial court retained jurisdiction. We overrule point of error one.

## RETALIATORY DISCHARGE

■ In their second point of error, appellants argue that the evidence is legally and factually insufficient to support the trial court's finding that Cazarez was discharged in violation of former article 8307c. In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992). If there is more than a scintilla of such evidence, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *Brown-*

*ing–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993). In reviewing the factual sufficiency of the evidence, we must review all of the evidence and determine if the weight of the record supports the finding. *Plas-Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that it is manifestly unjust or clearly wrong and should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

■ Appellants contend there is no evidence of a causal link between Cazarez's discharge and her filing of a workers' compensation claim. A plaintiff does not have to prove that her discharge was solely because of her workers' compensation claim. *Santex, Inc. v. Cunningham*, 618 S.W.2d 557, 559 (Tex.Civ.App.—Waco 1981, no writ). She merely has to establish the "causal connection" between her discharge and the filing of a workers' compensation claim as an element of her prima facie case. *Investment Properties Management, Inc. v. Montes*, 821 S.W.2d 691, 694 (Tex.App.—El Paso 1991, no writ). Circumstantial evidence, and the reasonable inferences from such evidence, can prove the causal connection. *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654, 658 (Tex.App.—El Paso 1989, writ denied). Once the link is established, it is the employer's burden to rebut the alleged discrimination by showing there was a legitimate reason behind the discharge. *Hughes Tool Co. v. Richards*, 624 S.W.2d 598, 599 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), *cert. denied*, 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982).

■ Circumstantial evidence sufficient to establish a causal link between termination and filing a compensation claim includes: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to

similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 61 (Tex.App.—Fort Worth 1993, writ denied); *Montes*, 821 S.W.2d at 694–95; *Paragon Hotel Corp.*, 783 S.W.2d at 658.

It is undisputed that appellants were aware of her claim. Cazarez cites the following as evidence that appellants showed a negative attitude towards her injury and claim: Continental's application for employment asked whether she had ever been on workers' compensation. Duff's file questioned whether Cazarez's injury to her ankles was actually caused by back or knee problems. Her supervisor's file indicated a question as to whether Cazarez had worn improper shoes. Duff's file indicates almost constant monitoring, through contact with Cazarez, her doctor, and the carrier, but he did not contact anyone during the 3–day absence between November 4 and 8. On November 8, Cazarez told Duff she had been to the doctor, and Duff's response indicated he doubted the truth of that statement. Cazarez testified that her "impression" was that Duff wanted her back at work instead of home receiving worker's compensation. After Cazarez and the compensation carrier both asked Duff to reconsider her termination, he refused. When Dr. Parsley "re-released" Cazarez to return to work on November 18, his letter asked that if further information was needed he should be contacted. Duff never contacted Parsley after receipt of this letter. Moreover, he did not contact Parsley immediately before or after the termination.

Cazarez cites the following evidence to show that the stated reason for her termination is false: She had been evaluated as an "outstanding" employee and had received at least twelve raises during her 15½ years with the company. Duff knew on October 30 that Cazarez was waiting for her "boot" (ankle supports) to arrive before she could return to work. Cazarez did not receive her ankle supports until after she was fired. Cazarez visited Dr. Parsley on November 5, 1991. Also on November 5, Villareal spoke to Cazarez's son who told her his mom was not well, and Villareal testified she reported her visits to Duff. Duff testified the 3–day rule would not be violated if a relative reported, as long as the company received word of the employee's absence. On November 8, Cazarez spoke to Duff and told him she had been to the doctor. Duff invoked the 3–day rule as the reason for her termination, but reported to the Texas Employment Commission and the compensation carrier that Cazarez had voluntarily quit. Duff testified the 3–day rule did not apply to those on workers' compensation leave. Cazarez had not called in every three days from June through October. She remained on workers' compensation until 1992, after her termination. The compensation carrier's file indicated Cazarez was sick with the flu and awaiting her boot when terminated. Duff testified that Cazarez was one year away from full vesting in the company's retirement plan when terminated. There is also some evidence that Duff did not comply with the company policy, as set out in the union agreement, of providing transportation for injured employees returning to work.

 In view of the foregoing, both of appellants' evidentiary challenges must be overruled. Clearly, there is more than a scintilla of evidence to support the court's finding of a causal connection. Additionally, the evidence cited by appellants does not establish that the court's finding is against the weight of the evidence in the record. Appellants point to Duff's testimony that Continental administered the 3–day policy in a consistent manner, and that Cazarez had notice of the 3–day policy by virtue of her membership in the union, as all union members received a copy of the rules. Duff testified the 3–day rule applied after an employee on compensation leave had been released to return to work. Appellants contend that they merely followed Continental's absence policy in discharging her. If not rebutted by some evidence of a retaliatory motive, uniform enforcement of a reasonable absence-control provision, such as a 3–day rule similar to that in this case, does not constitute retaliatory discharge. *Texas Division–Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 313 (Tex.1994). In *Palmer v. Miller Brewing Company*, the Fort Worth court

held there that the use of an absence control policy which does not excuse compensation related absences does not *per se* violate former article 8307c. 852 S.W.2d at 62. The employee must still show that her instituting a compensation claim was a factor in her termination. *Id.* The fact finder, however, may reject an employer's claim it applied a neutral discharge policy. *Acme Boot Co. v. Montenegro,* 862 S.W.2d 806, 809 (Tex. App.—El Paso 1993, no writ). An appellate court is not a fact finder and may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if the evidence would clearly support a different result. *Id.* There were several inconsistencies in Duff's testimony, including whether the 3–day rule applied to worker's compensation cases, whether Cazarez was terminated or quit, and whether he reviewed her file before terminating her. We defer to the fact finder's credibility determination as to the reason given for Cazarez's termination. *See Montes,* 821 S.W.2d at 696; *see also Paragon Hotel Corp.,* 783 S.W.2d at 658 (factfinder free to reject employer's denial of negative attitude toward employee's injured condition).

Appellants argue that the court could not rely on Cazarez's subjective belief or her "impression" that Duff did not want her to receive worker's compensation. The employee's subjective belief is not enough to support a causal connection. *Hughes Tool Co.,* 624 S.W.2d at 599. In this case, however, there is sufficient evidence, in addition to Cazarez's own belief, to support her claim. Appellants also argue that the evidence in this case does not approach the level of the evidence indicating a causal link in other cases. For example, in *Murray Corp. of Maryland v. Brooks,* 600 S.W.2d 897, 901–02 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.), the testimony showed that an increase in insurance premiums caused by claims was considered in discharging the employee, and that two employees filing substantial claims were the only ones not recalled from layoff. In *Schrader v. Artco Bell Corp.,* 579 S.W.2d 534, 539 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.), the employer's foreman told plaintiff he could not work for the company as long as he was represented by an attor-

ney, and the executive vice-president told plaintiff the company could not put him back to work because he had made a compensation settlement. In *A.J. Foyt Chevrolet, Inc. v. Jacobs,* 578 S.W.2d 445, 447 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ), the employer's manager said, "I would put you back to work, but I would be a damned fool to hire you when you have a lawyer," and the general manager stated plaintiff "was discharged because he would not fire his lawyer." Other cases, however, have found evidence similar to that in this case sufficient to support a finding of a causal connection. *See, e.g., Montes,* 821 S.W.2d at 694–95. Each case of retaliatory discharge must stand on its own. *Id.* at 694.

In conclusion, after reviewing all the evidence, we find there is legally and factually sufficient evidence to support the judgment. The trial court's finding is not so against the overwhelming weight of the evidence that it is manifestly unjust or clearly wrong. We overrule point two.

### EXCLUSION OF EVIDENCE

In point of error three, appellants complain that the trial court erred in excluding evidence regarding Continental's non-discriminatory application of the three-day rule and statistical evidence regarding Continental's treatment of employees with work-related injuries. Appellants filed a formal bill of exception. *See* TEX.R.APP.P. 52(c). Cazarez objected to the bill.

Formal bills of exception must be presented to the trial judge for her allowance and signature. TEX.R.APP.P. 52(c)(4). If the judge finds the bill to be correct, she shall sign it without delay and file it with the clerk. TEX.R.APP.P. 52(c)(5). If the judge finds the bill incorrect, however, she shall suggest corrections, and if they are agreed to, she shall make the changes, sign the bill and file it. TEX.R.APP.P. 52(c)(6). Rule 52(c) also sets forth the procedure to be followed when the party does not agree to the corrections. TEX.R.APP.P. 52(c)(7) and (8). When a timely motion for new trial has been filed in a civil case, as here, formal bills of exception shall be filed with the trial court within

ninety days after the judgment is signed. TEX.R.APP.P. 52(c)(11).

In this case, appellants did not follow the proper procedures for making a formal bill of exception. While the bill was filed within ninety days of the judgment, the trial judge did not sign it or suggest corrections. The trial court held a hearing on the bill on January 14, 1994, after its plenary power had expired and almost one month after appellants had perfected their appeal in this court. The court signed an order denying the exceptions on January 25, 1994. No corrections were filed. In addition, appellants did not follow the outlined procedure for a bystanders bill. TEX.R.APP.P. 52(c)(8). A formal bill of exceptions not approved by the trial court or opposing counsel, and not a bystanders bill, is inadequate to preserve a complaint on appeal. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 275 (Tex.App.—Amarillo 1988, writ denied); *Goodpasture v. Coastal Indus. Water Auth.,* 490 S.W.2d 883, 885 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). The errors complained of in appellants' formal bill of exceptions were not preserved for our review.

Appellants also made an informal bill, or offer of proof, of some statistical evidence, and had two documents (DX–16 and DX–17) admitted for purposes of the bill. *See* TEX.R.APP.P. 52(b). Appellants do not identify in the record where these documents were offered and objection was made. *See* TEX.R.APP.P. 74(d). Nor do they cite to the reasons why they were admissible. When an objection is lodged and evidence is excluded, the party must specify the purpose for which the evidence is offered and give the trial judge reasons why the evidence is admissible. *Vandever v. Goettee,* 678 S.W.2d 630, 635 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Error is not preserved.

We conclude that appellants did not properly preserve error on the exclusion of evidence. Point of error three is overruled.

## EXEMPLARY DAMAGES

Appellants argue points four and five, which attack the factual and legal sufficiency of the evidence to support an award of exemplary damages, jointly. Point four attacks the finding that appellants acted willfully and maliciously and point five contests the amount of the award of exemplary damages.

"A person who violates Section 451.001 is liable for reasonable damages incurred by the employee as a result of the violation." TEX.LAB.CODE ANN. § 451.002 (Vernon Pamph.1995). This language does not limit damages to only actual damages. Therefore, exemplary damages are recoverable in a wrongful discharge case. *Azar Nut Co.,* 734 S.W.2d at 668.

Appellants first argue that there is absolutely no evidence of ill-will, spite, evil motive, or purposeful injury to support the court's finding of malice. We disagree. Willfulness and malicious intent may be inferred from the conduct of the wrongdoer. *Montenegro,* 862 S.W.2d at 807. Malice can be established in the absence of a history of confrontation or abusive language between the employer and employee. *See Wal–Mart Stores, Inc. v. Kee,* 743 S.W.2d 296, 298 (Tex. App.—Tyler 1987, no writ).

In *Montes,* the trial court submitted the following definition of a "malicious or willful" act as: "an intentional wrongful act done without just cause or excuse before one believes it to be right or legal or done with conscious disregard for the rights of others." *Montes,* 821 S.W.2d at 696. The El Paso court of appeals relied on the manager's admitted knowledge that it was illegal to discriminate against an employee because she was pursuing a workers' compensation claim to satisfy this definition of "malicious or willful." *Id.* The evidence in this case supports a finding that Duff and Continental acted intentionally and in conscious disregard of Cazarez's rights.

In addition to the evidence already cited showing appellants' negative attitude towards her and that the reason given for her termination was false, Cazarez contends the following also supports the trial court's finding of malice: Before her termination, the company was concerned Cazarez's accident may have been caused by a preexisting injury. Another employee, Karen Walker, was given

an opportunity to redeem her employment, and Cazarez was not. Even though Duff had been informed Cazarez was not well, he did not check on her during the 3-day period before she was fired. Both Cazarez and the compensation carrier asked Duff to re-hire Cazarez, but he refused. We find that the evidence is legally and factually sufficient to support the court's finding of malice.

When we conduct a factual sufficiency review of a punitive damages award, we must detail the relevant evidence in our opinion as to why the evidence supports or does not support the punitive damages in light of the factors in *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 31 (Tex.1994). These factors are: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Kraus*, 616 S.W.2d at 910.

Among the evidence Cazarez cites relevant to these factors is her age (52) and that she was one year from vesting in her retirement benefits when she was injured and subsequently terminated. She had an eighth grade education, worked as a janitor, and had an excellent work record. Continental was owned by The Quaker Oats Company, and the evidence at trial showed Quaker had shareholder equity of over $1 billion. Financial ability is relevant to exemplary damages. *Lunsford v. Morris*, 746 S.W.2d 471, 472–73 (Tex.1988). Cazarez also argues that the legislature's enactment of article 8307c as one of the earliest exceptions to employment-at-will shows the seriousness of the offense and the extent that retaliatory discharge offends justice and propriety.

There is no set ratio between actual and punitive damages. *Kraus*, 616 S.W.2d at 910. In this case, the ratio of actual damages, $150,000, to punitive damages, $500,-000, is approximately one to three. We conclude that the amount of the punitive damages is not excessive because awards of similar or greater range have been upheld by other courts. *See, e.g., Borden v. Guerra*, 860 S.W.2d 515, 527–28 (Tex.App.—Corpus Christi 1993, writ dism'd) ($360,000 to $1.75 million); *Ethicon, Inc. v. Martinez*, 835 S.W.2d 826, 835–36 (Tex.App.—Austin 1992, writ denied) ($163,500 to $900,000).

Finding sufficient evidence to support the recovery of the exemplary damages awarded below, we overrule points four and five. We affirm the judgment of the trial court.

EDELMAN, Justice, concurring and dissenting.

I concur in the judgment and opinion of the Court except as to the sufficiency of the evidence to support the award of punitive damages, from which I dissent.

In *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10 (Tex.1994), the Texas Supreme Court substantially clarified the Texas gross negligence standard and "no evidence" review of gross negligence findings. *Id.* at 26. However, that opinion was expressly limited to gross negligence, and declined to state the circumstances in which "intentional" misconduct will justify punitive damages. *Id.* at 23 n. 16. This case presents that issue.

Punitive damages are levied against a defendant as punishment for outrageous, malicious, or otherwise morally culpable conduct. *Id.* at 16. Since the legal justification for punitive damages is similar to that for criminal punishment, punitive damages require appropriate substantive and procedural safeguards to minimize the risk of unjust punishment. *Id.* at 16–17. Although *Moriel* addressed those safeguards only in the context of gross negligence, such safeguards are no less essential in awarding punitive damages for malice, fraud or intentional conduct.

Importantly, as noted in *Moriel*, the fact that an insurer denies a claim knowing it has no reasonable basis for doing so justifies only an award of compensatory damages and nothing more. *Id.* at 18. Such behavior justifies punitive damages only when further accompanied by malicious, intentional, fraudulent or grossly negligent conduct. *Id.*

This reasoning would suggest that the fact that an employer discharges or discriminates against an employee because he has filed a

workers' compensation claim also justifies compensatory damages only. Punitive damages are not automatically recoverable merely because a discharge is "retaliatory."

Of the four categories of conduct which *Moriel* recognizes as justifying an award of punitive damages, gross negligence is the least willful, and, in that sense, the least culpable. Accordingly, the requirements necessary to establish the more culpable types of conduct, i.e., fraud, malice, and intentional acts, should be no less rigorous than those required to prove gross negligence. Said another way, the requisites to prove gross negligence would largely be defeated if less could be shown to recover punitive damages for malice, fraud or intentional conduct.

The two elements required to prove gross negligence are:

(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Id.* at 23.[1]

With regard to the first element, "extreme risk" refers to the possibility of causing extraordinary harm not ordinarily associated with breach of contract or bad faith, such as death, grievous physical injury, or financial ruin. *Id.* at 24. Thus, the harm must be independent and qualitatively different from the sort of injuries that typically result from bad faith or breach of contract. *Id.* Anxiety and embarrassment do not, and mental anguish might not, satisfy this requirement. *Id.* at 24, 26.

As to the second element, a defendant's subjective mental state can be proved by either direct or circumstantial evidence. *Id.* at 23.

To the extent that extreme risk, awareness thereof by the defendant and action in conscious disregard of that risk must be shown to prove gross negligence, no less should be established to recover punitive damages for malice, fraud or intentional conduct. If anything, those theories should involve proof of the same risk and awareness, and a more willful mental state by the defendant.

In this case, the trial court found that the conduct of appellants, "jointly and severally, was intentional, willful and malicious in its wrongful discharge" of appellee. However, the findings of fact do not reflect a risk of extraordinary harm to appellee that is independent and qualitatively different from the sort of injuries that typically result from wrongful discharge. Nor do those findings show, even circumstantially, that appellants were aware of such a risk, and acted either in conscious disregard of it or with intent to expose appellee to it.

Upholding an award of punitive damages under these circumstances would suggest that such damages are recoverable whenever the Anti–Retaliation Law is violated. That is a result which I do not believe the legislature intended or the Constitution permits. I would therefore sustain appellants' points of error challenging the sufficiency of the evidence supporting punitive damages, and reverse and remand the award of punitive damages.[2]

---

1. Although these elements were set forth in the context of an insurance bad faith lawsuit, "gross negligence in the context of insurance is *no different from gross negligence in any other context.*" *Moriel,* 879 S.W.2d at 23 (emphasis in original).

2. Upon reversal, the judgment in *Moriel* was remanded rather than rendered because the decision represented a substantial clarification of the law. Thus, in the interest of justice, an opportunity to retry that case in accordance with the newly announced standards was warranted. The same would hold true to the extent that new standards were applied to this case.