Tommy JENKINS, Appellant,

v.

GUARDIAN INDUSTRIES CORP. and Charles Hicks, Appellees.

No. 10–99–028–CV.

Court of Appeals of Texas, Waco.

March 22, 2000.

Amy Grubbs Thomas, Mexia, for appellant.

Wesley M. Hightower, Karen A. Wardell, Fort Worth, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

Tommy Jenkins (Jenkins) sued Guardian Industries Corp. (Guardian), his former employer, and Charles Hicks (Hicks), his former supervisor, for wrongful termination. Summary Judgment was granted in favor of both Guardian and Hicks. Jenkins appeals, asserting that genuine issues of material fact exist as to (1) whether he was terminated in retaliation for filing a workers' compensation claim and (2) whether his termination was in violation of the Texas Commission on Human Rights Act (TCHRA). *See* TEX. LAB.CODE ANN. §§ 21.001–.306, 451.001–.003 (Vernon 1996 & Supp.1999). We will affirm the summary judgment as to Hicks, reverse it on the retaliation and discrimination claims against Guardian, sever the claims against Guardian, and remand the latter for a trial on the merits.

### FACTS

Jenkins was employed by Guardian in 1984 at its glass manufacturing plant in Corsicana. On January 25, 1993, Jenkins injured his knee while working and filed a workers' compensation claim. Jenkins continued on "light duty" through March of 1993, when he had surgery. From March of 1993 until June of 1994, Jenkins did not work at all and received medical and indemnity benefits from Guardian's workers' compensation carrier. His workers' compensation benefits ceased after sixteen months and, because the long-term disability insurance carrier determined that Jenkins was not totally disabled from working in all occupations, his long-term disability benefits also ceased on August 30, 1994.

In a letter dated August 10, Guardian notified Jenkins that his benefits would cease on August 30 and also informed him that he could continue his health insurance coverage at his own expense for an additional 18 months. On August 18, Jenkins' doctor signed a release stating that he could "return to full duties." Jenkins returned to Guardian on August 30 with the release and stated that he was ready to return to work, although he could not bend his knee and, therefore, his abilities were limited. He admitted that his doctor did not really believe he was ready to return to work, but signed the release because he asked for it. Guardian conditionally offered Jenkins a position on the "raw glass production line," as this was the "only job available." Jenkins attempted to perform a "return-to-work physical" which tested whether Jenkins could perform the position offered, but he could not pass it. Jenkins indicated that he believed he could perform one of the jobs "in the warehouse," but he was not offered any position other than the one on the production line. On September 30, Guardian notified Jenkins in writing that their employment relationship was terminated.

### STANDARD OF REVIEW

The summary judgment movant bears the burden to prove that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Delta Air Lines, Inc. v. Norris,* 949 S.W.2d 422, 425 (Tex.App.—Waco 1997, writ denied). A defendant-movant must conclusively negate at least one of the elements of the non-movant's cause of action or conclusively establish every element of an affirmative defense. *U.S. Fire Ins. Co. v. Williams,* 955 S.W.2d 267, 268 (Tex.1997).

When determining whether a material fact issue exists, we must accept as true all evidence favorable to the non-movant. *Nixon,* 690 S.W.2d at 548–49; *Delta Air Lines, Inc.,* 949 S.W.2d at 425. We must also resolve all doubts and indulge every reasonable inference in favor of the non-movant. *Nixon,* 690 S.W.2d at 549; *Delta Air Lines, Inc.,* 949 S.W.2d at 425.

Although some jurisdictions place a burden on the non-movant to pres-

ent evidence in support of the non-movant's claim or defense, "we never shift the burden of proof to the non-movant unless and until the movant has 'establish[ed] his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law.'" *State v. Durham,* 860 S.W.2d 63, 68 (Tex.1993) (citing *Casso v. Brand,* 776 S.W.2d 551 (Tex.1989), quoting *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979)). Thus, when necessary to establish a fact issue, the non-movant must expressly present to the trial court its reasons to avoid summary judgment, and present summary judgment proof. *Westland Oil Dev. Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903, 907 (Tex.1982). A summary judgment may not, however, be based on a weakness of the non-movant's pleading or proof unless it establishes the absence of a right of action or an insurmountable bar to recovery. *Durham,* 860 S.W.2d at 68 (citing *Swilley v. Hughes,* 488 S.W.2d 64, 66–67 (Tex.1972)).

As we will see, because a trial of claims such as these involves shifting burdens of production of evidence, analysis of such claims in the summary judgment context becomes a more complex matter.

## RETALIATION CLAIMS

Sections 451.001–.003 of the Texas Labor Code regulate what constitutes a wrongful termination and what must be proven to establish that the termination was in violation of the Workers' Compensation Act. TEX. LAB.CODE ANN. §§ 451.001–.003. They provide:

**§ 451.001. Discrimination Against Employees Prohibited**

A person may not discharge or in any other manner discriminate against an employee because the employee has:

(1) filed a workers' compensation claim in good faith;

(2) hired a lawyer to represent the employee in a claim;

(3) instituted or caused to be instituted in good faith a proceeding under Subtitle A; or

(4) testified or is about to testify in a proceeding under Subtitle A.

**§ 451.002. Remedies; Burden of Proof**

(a) A person who violates Section 451.001 is liable for reasonable damages incurred by the employee as a result of the violation.

(b) An employee discharged in violation of Section 451.001 is entitled to reinstatement in the former position of employment.

(c) The burden of proof in a proceeding under this section is on the employee.

**§ 451.003. Injunction**

A district court may restrain, for cause shown, a violation of Section 451.001.

*Id.*

■ Section 451.001 is a statutory exception to the Texas common-law doctrine of employment-at-will. *Terry v. Southern Floral Co.,* 927 S.W.2d 254, 256 (Tex. App.—Houston [1st Dist.] 1996, no writ). The statute is designed to protect employees who are entitled to workers' compensation benefits from being discharged because they take steps to collect those benefits. *Id.*

■ At a trial to recover for damages arising from retaliatory discharge, an employee must prove that "but for" his filing of a workers' compensation claim, the discharge would not have occurred when it did. *Trico Technologies Corp. v. Montiel,* 949 S.W.2d 308, 312 (Tex.1997); *Continental Coffee Products. Co. v. Cazarez,* 937 S.W.2d 444, 450–51 (Tex.1996). The Supreme Court has recognized factors which, if proven by the plaintiff, are considered circumstantial evidence of this causal link. *Continental Coffee,* 937 S.W.2d at 450–51. These include: (1) knowledge of the compensation claim by those making the deci-

sion on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Continental Coffee Products. Co. v. Cazarez*, 903 S.W.2d 70, 77 (Tex. App.—Houston [14th Dist.] 1995), *aff'd in part and rev'd in part on other grounds*, 937 S.W.2d 444 (Tex.1996); *Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 61 (Tex. App.—Fort Worth 1993, writ denied); *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654, 658 (Tex.App.—El Paso 1989, writ denied).[1] The workers' compensation claim need not be the sole cause of the termination. *Continental Coffee*, 937 S.W.2d at 450–51; *Terry*, 927 S.W.2d at 257 (filing the claim was at least a determining factor in the discharge); *Department of Human Services v. Hinds*, 904 S.W.2d 629, 635–36 (Tex.1995) (the standard of causation in whistleblower and similar cases should be used in employment discrimination cases, *i.e.*, no requirement that the protected conduct of the employee be the *sole* cause of the discrimination); *see also Gorges Foodservice, Inc. v. Huerta*, 964 S.W.2d 656, 667 (Tex. App.—Corpus Christi 1998, no pet.).

■ Once a link between filing the claim and the discharge is established, it is the employer's burden to rebut the alleged retaliation by showing there was a legitimate reason for the discharge. *Terry*, 927 S.W.2d at 257. Thereafter, the burden shifts back to the employee to produce controverting evidence of a retaliative mo-

tive. *See id.* The causal connection-retaliative motive may be established by either direct or circumstantial evidence. *Texas Division–Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex.1994) (per curiam) (motive); *Terry*, 927 S.W.2d at 257 (causal connection). The employee's subjective beliefs are, however, no more than conclusions. *Texas Division–Tranter*, 876 S.W.2d at 314.

## DISCRIMINATION CLAIMS

■ The Texas Commission on Human Rights Act (TCHRA) is codified in chapter 21 of the Labor Code. TEX. LAB.CODE ANN. §§ 21.001–.405. The TCHRA prohibits an employer from discriminating against an individual with respect to compensation, or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, national origin, or age. *Id.* § 21.051. One of the purposes of the TCHRA is the correlation of federal and state law in the area of employment discrimination. *See Gold v. Exxon Corp.*, 960 S.W.2d 378, 380–81 (Tex.App.—Houston [14th Dist.] 1998, no pet.); *Rios v. Texas Commerce Bancshares, Inc.*, 930 S.W.2d 809, 818–19 (Tex.App.—Corpus Christi 1996, writ denied); *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex.App.—Houston [1st Dist.] 1993, writ denied). The Texas Supreme Court has directed Texas courts to seek guidance from federal interpretations of Title VII of the Civil Rights Act of 1964 when construing the TCHRA. *See Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 232 (Tex.1993). Accordingly, we may look to federal case law interpret-

---

1. The Texas Supreme Court's *Continental Coffee* opinion does not specifically approve the use of these factors. Rather, the Court notes that workers' compensation-retaliatory discharge cases require proof similar to that required in Whistleblower Act cases, and refers to *Texas Department of Human Services v. Hinds*, 904 S.W.2d 629 (Tex.1995), in both contexts. *Continental Coffee Products. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). However, the Court noted that the intermediate court of appeals used these fac-

tors and did not disapprove. The opinion ultimately relied on these factors. *See id.* at 452 (evidence that employer's explanation of termination was false and that employer had negative attitude toward employee's injured condition sufficient to support retaliatory discharge finding). Furthermore, other courts have applied these factors. *See, e.g., Gorges Foodservice, Inc. v. Huerta*, 964 S.W.2d 656, 665 (Tex.App.—Corpus Christi 1998, no pet.). Therefore, we will also rely on these factors.

ing Title VII in determining the allocation of burdens between the employer and employee when a discrimination claim is tried under the TCHRA. *Rios,* 930 S.W.2d at 818.

The burdens have been described as:

In order to show a prima facie case of employment discrimination, the plaintiff must show 1) that he was a member of a protected class, 2) that he suffered an adverse employment action, and 3) that non-protected class employees were not treated similarly. Once the plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate legitimate, nondiscriminatory reasons for any allegedly unequal treatment. If legitimate nondiscriminatory reasons are established by the employer, the burden then shifts back to the plaintiff to prove that the employer's articulated reasons are a pretext for unlawful discrimination. Even though the burden of production shifts, the burden of persuasion remains continuously with the plaintiff.

*Id.* (citations omitted).

## GUARDIAN'S MOTION FOR SUMMARY JUDGMENT

Guardian's motion for summary judgment was supported by three exhibits: (1) Charles Hicks' affidavit and its attachments; (2) Jenkins' deposition and its attachments; and (3) business records of Dr. Kal Schwarts. With respect to the issues now on appeal, the motion asserted three grounds: (1) Hicks could not be held individually liable; (2) Guardian was entitled to summary judgment on the retaliation claim; and (3) it was entitled to summary judgment on the discrimination claim.[2] These assertions were made under the traditional summary-judgment rule, whereby Guardian expressly undertook to negate

one element of each of Jenkins' claims. *See U.S. Fire Ins. Co.,* 955 S.W.2d at 268.

INDIVIDUAL LIABILITY

The first ground pointed out that Hicks' affidavit established that he was the "Employee Relations Manager" for Guardian and, as such, is not an "employer" under the TCHRA. Citing *Stoker v. Furr's Inc.,* 813 S.W.2d 719 (Tex.App.—El Paso 1991, writ denied), Hicks urged that because he was not Jenkins' employer, neither the retaliation claim nor the discrimination claim could be maintained against him.

RETALIATION CLAIM

Concerning the retaliation claim, Guardian first asserted that Jenkins had "not put forth evidence, circumstantial or direct, of [a] retaliatory motive" and that Jenkins had no evidence of a causal link between his filing of the workers' compensation claim and his discharge. The motion does not urge that Guardian's summary judgment evidence conclusively negates the causal link.

Guardian next asserts that its reason for discharging Jenkins was legitimate. In this connection, it urges that an employer has the right to terminate an employee after an on-the-job injury if, due to the nature of that injury, the employee can no longer perform the essential functions of his job. Furthermore, it says that it did not have to create a new position or fire other employees to accommodate Jenkins. The summary judgment evidence which, it says, supports this assertion includes Dr. Schwarts' records which state that Jenkins "does not meet [the] requirements for [return to work]" and Hicks' affidavit stating that his decision to terminate Jenkins' employment was based on "his inability to perform the essential job functions of the c-crew lower line position I conditionally offered to him as he was insisting upon an

2. A fourth assertion, based on the new "no evidence" summary judgment rule, was directed at Jenkins' claim of intentional infliction of emotion distress. TEX.R. CIV. P. 166a(i). Jenkins dismissed the claim by

amending his petition, the summary judgment merely denies all relief, and Jenkins does not assert an issue on appeal concerning this claim.

immediate decision regarding his work status."

DISCRIMINATION CLAIM

Guardian attempts to defeat Jenkins' discrimination claim by showing that he could not perform the essential functions of the only job open when he wanted to return to work, *i.e.*, in the glass production area. It points to Jenkins' deposition as admitting that he could not perform those functions at the time he wanted to return and to Dr. Schwarts' medical records as confirming that fact.

It next asserted that Jenkins had produced no evidence that he could perform that job with reasonable accommodation. Finally, it asserted that the decision to terminate his employment was not based solely on his disability.

### JENKINS' RESPONSE

Jenkins' response to Guardian's motion urged that the summary judgment evidence created fact issues concerning (a) a retaliatory motive for his discharge and (b) whether Guardian could have "reasonably accommodated" his continued employment. The summary judgment evidence included his own affidavit, letters and statements from various Guardian employees, Hicks' deposition testimony, Guardian's answers to requests for admission and interrogatories, and affidavits from his attorney and a former co-worker.

Jenkins pointed out that, on the retaliation claim, he would not have to prove that his discharge resulted solely from his filing the compensation claim and he could establish a "causal connection" using circumstantial evidence and reasonable inferences from the evidence.[3] On the discrimination claim, Jenkins urged that Guardian could not legally discharge him if he was "potentially able to do the job in question." He asserted that he could, with reasonable accommodation, perform the essential

functions of a position in the warehouse at Guardian. "Reasonable accommodation" he says, would have included "job-restructuring, part-time, split shifts or modified work schedules, or reassignment to an open position." He claimed that the summary judgment evidence shows that he and others had worked "light duty" at Guardian, that temporary workers were occupying some positions that he could fill, and that he had vacation time available that he could use until a position became available.

### GUARDIAN'S REPLY TO JENKINS' RESPONSE

Guardian's reply to Jenkins' response first reurged its position on Hicks' individual liability. On the retaliation claim, it urged that even if Jenkins' summary judgment evidence asserted a fact issue on retaliatory motive, there was no proof of causation, *i.e.*, that he would not have been terminated "but for" his filing the compensation claim. In essence, it contends that the termination due to his inability to perform the duties of the job eliminates his claim for retaliation.

On the discrimination claim, the reply asserts: "It is undisputed that Plaintiff could not perform the essential function of any job at the Corsicana facility." It then asserts that Jenkins did not produce summary judgment evidence that would create a fact issue concerning reasonable accommodation because none of the accommodations that he suggested were reasonable as a matter of law.

Having stated the summary judgment motions and responses, we begin our consideration of the issues. After disposing of the question of Hick's personal liability, we will consider Jenkins' issues in reverse order because the disposition of the discrimination claim has a bearing on the outcome of the retaliation claim.

---

**3.** Jenkins' response also cites *Continental Coffee Products,* which sets forth the employee's burden. 937 S.W.2d at 450.

## PERSONAL LIABILITY

 Jenkins sued Charles Hicks, Guardian's Employee Relations Manager, in his individual capacity. However, supervisors and managers are not liable in their individual capacities for alleged acts of discrimination under the TCHRA. *De-Moranville v. Specialty Retailers, Inc.*, 909 S.W.2d 90 (Tex.App.—Houston [14th Dist.] 1995), *rev'd on other grounds*, 933 S.W.2d 490 (Tex.1996); *Benavides v. Moore*, 848 S.W.2d 190 (Tex.App.—Corpus Christi 1993, writ denied). Nor can a claim under the Workers' Compensation Act be brought against one who is not an "employer." *Stoker*, 813 S.W.2d at 721–24. Guardian employed both Hicks and Jenkins. Hicks is not an employer. Thus, summary judgment in favor of Hicks was proper on all grounds and will be affirmed.[4]

## JENKINS' DISCRIMINATION CLAIM

 Jenkins' second issue contends that there are genuine issues of material fact concerning his claim of discrimination under the TCHRA. Specifically, he asserts that Guardian ignored its obligation to make a "reasonable accommodation" so that he could perform some job.

The initial question is how to apply the shifting burdens in the summary judgment context. Elements one and two—whether the plaintiff is a member of a protected class and whether he suffered an adverse employment action—are straightforward fact determinations that will be determined to be genuine fact issues or not depending on the summary judgment evidence. The third element—whether non-protected employees were treated differently—is where we consider the burden-shifting approach to be applicable in the context of an employer seeking a summary judgment on the plaintiff-employee's discrimination claim.

 The employer-movant may attempt to show that non-protected employees were treated similarly. If so, the issue may be joined when the employee produces summary judgment evidence that raises a fact issue about how various employees were treated. The employer-movant may, however, with or without conceding that the plaintiff was treated differently, advance legitimate, nondiscriminatory reasons for the allegedly unequal treatment. If such a reason is advanced, then the employee may be called upon to produce summary judgment evidence that raises a fact issue about whether the employer's articulated reasons are a pretext for unlawful discrimination. In either event, we must bear in mind that under our summary judgment practice, the burden of proof never shifts to the non-movant unless and until the movant has established its entitlement to a summary judgment on the issues expressly presented to the trial court. *Durham*, 860 S.W.2d at 68. With this in mind, we turn to the summary judgment motion and evidence.

When Guardian filed its motion for summary judgment Jenkins had not been called upon to adduce any evidence.[5] Guardian's summary judgment proof did not attempt to establish that non-protected employees were treated similarly. Instead, it adduced proof that it had a non-discriminatory reason for terminating Jenkins' employment, *i.e.* that Jenkins was physically unable to perform the only job available. Assuming this to be so, we examine whether Jenkins met his burden of producing summary judgment evidence that raises a fact issue about whether Guardian's stated reason for termination is a pretext.

---

4. Furthermore, Jenkins' brief only addresses the summary judgment in favor of Guardian.

5. Although Jenkins had responded to Guardian's earlier motion for summary judgment, we must view this *amended* motion as though it were Guardian's initial motion for summary judgment.

Sections 21.051 and 21.105 of the TCHRA make it an unlawful employment practice for an employer to discharge a disabled person on the basis of a disability when the disability does not impair the individual's ability to reasonably perform a job. Tex. Lab.Code Ann. §§ 21.051, 21.105 (Vernon 1996); *Austin State Hosp. v. Kitchen,* 903 S.W.2d 83, 88 (Tex.App.—Austin 1995, no writ). Thus, the issue is whether Jenkins' physical condition impairs his ability to reasonably perform a job. Tex. Lab.Code Ann. § 21.105. He may show that he can perform all the essential functions of a job or, by demonstrating that he could be "reasonably accommodated," he may show that he can "reasonably perform a job."

Jenkins filed an affidavit in an attempt to show that Guardian's stated reason for termination is false. He states that, after his injury, he could do jobs "such as [his] old job in the warehouse," but Guardian would not place him in those positions. Guardian offered him only a position which he could not perform and refused to "accommodate" him in a "light duty" position. He also offered evidence that Guardian had made the decision to terminate him prior to conducting a physical examination to see if he was able to perform the job.

Jenkins asserts that he is able to reasonably perform a job *if* Guardian will fulfill its obligation to make "reasonable accommodation." The types of reasonable accommodation which he suggests include: 1) assigning him to light duty work; 2) assigning him to a position occupied by a temporary worker; or 3) allowing him to take vacation time or unpaid leave until a job that he could perform becomes available. In response, Guardian says that the summary judgment evidence shows that Jenkins could not perform any job at the plant, available or not, and that it had no duty to create a position which Jenkins could perform.

Considered in the light most favorable to Jenkins, the record shows that Guardian considered only whether Jenkins could perform the "lower-line" raw glass production position which was available at the time Jenkins wanted to return to work. It is undisputed that this is a hard-labor job. Guardian did not consider whether Jenkins could perform any of the jobs that were being filled by temporary workers. The evidence shows that temporary workers are paid considerably less than full-time Guardian employees and receive no benefits. Guardian said it did not consider placing Jenkins in one of those positions because it would not be "cost-effective."

The evidence shows that jobs exist in the warehouse at Guardian which are considered "light duty." In the past, Jenkins and other employees worked on these "light duty" jobs after injuries. Jenkins was not offered a light duty position in the warehouse, but Guardian contends that no such job was available at the time Jenkins wanted to return to work. Furthermore, Guardian asserts that the regular practice is to rotate employees through the warehouse jobs in an effort to minimize the monotony of the job and thereby reduce the risk of injury. Thus, it says, putting Jenkins in one position when he could not perform all the others would have placed a burden on the rotation schedule. However, there is also some evidence that employees were allowed from time to time to refrain from rotating until they were able to perform some of the other jobs. This option was not provided to Jenkins.

The evidence also shows that other injured employees were put on leave to retain their employee status and not lose their accrued benefits until a job which they could perform became available. This option was not given to Jenkins.

Guardian also asserts the "undue hardship" defense provided by section 21.260 of the TCHRA. *Id.* § 21.260. At a trial, it would bear the burden of proof on its defense. *Austin State Hosp.,* 903 S.W.2d at 91. In the summary judgment context, it bears the burden of conclusively establishing every element of this affirma-

tive defense. *See Williams,* 955 S.W.2d at 268. Considered in the light most favorable to Jenkins, the summary judgment evidence does not conclusively establish that Guardian would have suffered an undue hardship in allowing Jenkins to take advantage of one of the alternative jobs raised by the summary judgment evidence until he was able to fully perform other jobs. *See Austin State Hosp.,* 903 S.W.2d at 92.

Giving Jenkins the benefit of all inferences and construing the evidence in the light most favorable to him, we find that genuine issues of material fact exist about whether, with reasonable accommodation, Jenkins could have reasonably performed the essential functions of an available job at Guardian. Thus, we find fact issues about whether Jenkins was fired in violation of the TCHRA. We sustain issue two.

## JENKINS' RETALIATION CLAIM

 Jenkins' first issue asserts that a genuine issue of material fact exists on his claim that he was terminated in retaliation for filing a workers' compensation claim. Again, our initial inquiry in this issue is how to apply the shifting burdens in the summary judgment context. When Guardian filed its motion for summary judgment, Jenkins had not been called upon to produce any evidence concerning Guardian's motive. Only after Guardian's summary judgment evidence established a legitimate, non-discriminatory reason for the discharge would Jenkins be required to come forward with summary judgment evidence of a retaliatory motive. *See Texas Division–Tranter,* 876 S.W.2d at 313–14; *Terry,* 927 S.W.2d at 256.

Guardian asserts that Jenkins was fired because he cannot perform the only job which was available at the time he wanted to return to work. Thus, it says Jenkins cannot show that his termination would not have occurred but for the filing of a workers' compensation claim. Its position is essentially that the legitimate reason it gave negates the causal connection between the filing of the claim and the discharge. Because Jenkins had not been called upon to produce evidence at that point, we will begin by assuming that prima facie evidence of a causal link exists. *See Terry,* 927 S.W.2d at 257. Thus, we address whether Guardian's summary-judgment evidence successfully established that it had a legitimate reason to discharge Jenkins.

 An employer is permitted to terminate an employee who sustains an on-the-job injury if that employee can no longer perform the essential functions of his job. *Trevino v. Kent County, Texas,* 936 S.W.2d 488, 493 (Tex.App.—Amarillo 1996, writ denied). It is undisputed that Jenkins could not pass a return-to-work physical designed to test whether he could perform the essential functions of the particular job offered to him. Furthermore, more than eighteen months passed between Jenkins' filing of the claim and his discharge. Although he had a release to work, Jenkins told Hicks and others at Guardian that his doctor really did not want him released to work. Jenkins' treating physician stated that he did not believe Jenkins could perform activities consistent with his former job duties. For purposes of our review, we will assume that Jenkins was required to produce evidence to rebut Guardian's reason for the discharge.

Thus we arrive at a consideration of whether Jenkins' summary judgment evidence was sufficient to raise a fact issue about retaliatory motive. He asserts that there is at least circumstantial evidence sufficient to raise a triable issue as to his retaliation claim. As we have noted, circumstantial evidence may be sufficient to establish motive.

Citing the *Continental Coffee* factors, Jenkins asserts that the following tend to show a retaliatory motive:

1. His employer's knowledge that he had filed a compensation claim is undisputed because it was involved in the claims process;

2. Hicks' comment that Guardian had been "good to [Jenkins]" by paying his workers' compensation benefits;

3. No hearing prior to his termination;

4. Guardian did not give Jenkins the option to be on leave without pay instead of terminating his employment;

5. Guardian's mention of his COBRA rights in a letter dated August 10, which he says shows that Guardian's stated reason for termination (inability to pass the return-to-work physical) is false because the return-to-work physical was given after August 10.

*Continental Coffee*, 937 S.W.2d at 444. He also points to the evidence that his supervisor, Henry Mayer, told other supervisors that Guardian intended to "get rid" of him.

Each of these facts is supported by summary judgment evidence. They are more than Jenkins' subjective belief that his employer retaliated against him. The opinion in *Continental Coffee* focuses on the "causal link" rather than the question of whether the employer's stated reason for firing the employee was false. The ultimate question is whether the evidence of a causal link is so strong as to justify a finding that the employer had a retaliatory motive. As we have stated, a retaliatory motive may be shown by circumstantial evidence. *Texas Division–Tranter*, 876 S.W.2d at 314. Thus, resolving all doubts and indulging every reasonable inference in Jenkins' favor, we find that the summary judgment evidence raises fact issues about whether Guardian had a retaliatory motive and Jenkins was fired for filing the workers' compensation claim. Our decision is reinforced by our earlier conclusion that genuine issues of material fact exist with respect to the discrimination claim. Thus, we reverse the summary judgment denying his retaliation claim. Issue one is sustained.

## CONCLUSION

We affirm the summary judgment in favor of Charles Hicks on both of Jenkins' claims. We reverse the summary judgment granted in favor of Guardian, sever the retaliation and discrimination claims against Guardian, and remand them for a trial on the merits.

Justice GRAY concurring and dissenting.

TOM GRAY Justice, concurring and dissenting.

The summary judgment evidence establishes certain facts as undisputed. Jenkins worked for Guardian. He was hurt on the job. He was allowed to work on light duty in the warehouse until his first surgery. Under Guardian's Health Plan Benefits, Jenkins's employment was deemed terminated when he ceased active work in March 1993. However, his benefits continued under that plan because of his injury. He remained off work and filed for long term disability, which was approved. When he was notified that his long term disability had been approved he was also notified that because he was not totally disabled, those benefits were about to terminate and as a result, his health plan coverage would also terminate. After receiving this notice he returned to his doctor and wanted to be given a release to return to work, "full duties." He obtained the release. Twelve days later he presented himself at Guardian and wanted to return to work. Guardian reviewed the situation and offered him the only job vacancy subject to his satisfactory completion of a return to work physical. He failed the physical. Having no position vacant that he could perform at that time, Guardian notified Jenkins that they could not return him to work with his current physical restrictions and that he should seek other employment.

Jenkins sued Guardian claiming: (1) that he was discriminated against because of his disability; and (2) that he was terminated in retaliation for having filed a

workers compensation claim. Guardian's response is that he cannot perform the essential functions of the only job available at the time the decision had to be made.[1]

Guardian moved for summary judgment. The trial court granted it. We must decide if the summary judgment proof entitled Guardian to judgment as a matter of law. The majority holds that Jenkins's controverting evidence raised fact questions that entitled him to a trial on the merits. Because I believe that Guardian's summary judgment evidence entitled it to judgment as a matter of law, I respectfully dissent.

## DISCRIMINATION BECAUSE OF A DISABILITY?

Jenkins has successfully confused the issues on the disability claim by questioning whether he can "reasonably perform a job if Guardian will fulfill its obligation to make 'reasonable accommodation.' The types of reasonable accommodation which he suggests include: 1) assigning him to light duty work; 2) assigning him to a position occupied by a temporary worker; or 3) allowing him to take vacation time or unpaid leave until a job that he could perform became available." *Jenkins v. Guardian Industries, Corp., et al.,* 16 S.W.3d 431, 440 (Tex.App.—Waco, 2000).

*Assigning to Light Duty Work*

The summary judgment evidence establishes that at times Guardian has temporarily accommodated employees by letting them work light duty. The summary judgment evidence also establishes that Guardian accommodated Jenkins in a simi-

lar manner from the time he was injured until the time of his surgery. What the summary judgment evidence also established is that Guardian has not made a permanent light duty position for any employee. The accommodation that Jenkins demands of Guardian is to create a permanent light duty position by altering its system of internal duty rotations, which Guardian has implemented for the safety of its workers. Additionally, the only light duty work in the rotation is in the warehouse and there was no vacant warehouse position at the time Jenkins wanted to be returned to work. Guardian is not required to create a job for Jenkins that he can perform. *Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 809 (5th Cir.), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1050, 140 L.Ed.2d 113 (1998) ("An employer is not required to create 'light duty' jobs to accommodate."); *Turco v. Hoechst Celanese Chemical Group, Inc.,* 101 F.3d 1090, 1094 (5th Cir.1996); *Champ v. Baltimore County,* 884 F.Supp. 991 (D.Md.1995), *aff'd,* 91 F.3d 129 (4th Cir.1996) (no permanent light duty position required).

*Replace a Temporary Worker*

Jenkins contends that Guardian should fire a "temporary worker" in the warehouse to create a vacancy that he could then be given. First, Guardian does not have to face the dilemma of firing one worker, temporary or not, to create a position for Jenkins. *Foreman,* 117 F.3d at 809–810 ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant."); *White v. York Intern. Corp.,* 45 F.3d 357, 362 (10th Cir.1995) ("However, the ADA does not require an employer to promote a disabled employee as an accom-

---

1. There is some confusion in the record regarding exactly when Jenkins was terminated. Under the benefits plan, he was deemed terminated in March 1993; however, Guardian focused on the date they notified him they could not return him to work. Jenkins claims the decision had already been made when he received the benefits termination letter in early August 1994. At that time Jenkins was receiving disability benefits and had not re- turned to work so there was apparently no question that he was not capable of performing the essential functions of his job. Otherwise, he would have already obtained a release and returned to work. For purposes of this evaluation, the critical time frame is from when Guardian knew he wanted to return to work until it was specifically determined that he could not perform the essential functions of the available job, and was so notified.

modation, nor must an employer reassign the employee to an occupied position, nor must the employer create a new position to accommodate the disabled worker."). To hold otherwise elevates Jenkins above his employee-at-will status to being entitled to displace another worker. Second, even if one of the temporary workers were fired to allow Jenkins an opening, it is undisputed that without permanently altering the job rotation and making the job a permanent light duty position, as discussed above, Jenkins's disability would prevent him from being able to fulfill the essential functions of the position.

*Vacation Time or Unpaid Leave*

When Jenkins arrived at Guardian to return to work he presented Guardian with no alternative other than putting him to work. He did not request that he be allowed to take his vacation time to await a possible opening before he was terminated. He did not request to be put on unpaid administrative leave to await a possible opening. He wanted to return to work immediately but was unable to perform the essential functions of the only job that was available at that time. Jenkins's attempt to raise the "accommodation" only after he has filed suit, when it clearly was not an alternative at the time, should be summarily rejected.

In summary, as a matter of law, the accommodations suggested by Jenkins were not reasonable. The only summary judgment evidence was that there was no accommodation that could be made to allow Jenkins to be able to perform the only job available at the time the decision had to be made.

### RETALIATION?

Jenkins relies on these reasons for both the discrimination claim and the retaliation claim. He also submits some additional circumstantial evidence in support of his retaliation claim. None of the evidence contradicts the fact that there is no job at Guardian for which Jenkins could perform the essential functions unless Guardian terminated a temporary worker and created a permanent light duty position in the warehouse specifically for him.

The principle case both parties and the majority rely upon is *Continental Coffee Products Co. v. Cazarez*, 937 S.W.2d 444 (Tex.1996). Cazarez presented a list of circumstantial evidence to prove the causal connection between the alleged retaliation and her termination. Jenkins and the majority list much of the same type circumstantial evidence to also establish the causal connection. Guardian has not contested Jenkins's ability to produce some evidence of causal connection. However, Jenkins and the majority also attempt to use the same evidence to establish that the stated reason for discharge is false. This is not proper.

In *Continental*, the stated reason for firing Cazarez was for violation of the three-day rule (a rule which requires an employee to contact the employer to explain extended absences every three days). The court stated:

> If an employee's termination is required by the uniform enforcement of a reasonable absentee policy, then it cannot be the case that termination would not have occurred when it did but for the employee's assertion of a compensation claim or other conduct protected by section 451.001. Thus, if Continental enforced the rule uniformly, and if Cazarez violated it, then Cazarez could not have been terminated in violation of the Anti–Retaliation Law.

*Id.* at 451.

According to Continental, Cazarez was terminated because she failed to call in to account for her absence on November 6, 7, and 8 and that she was thus properly fired on the 8th. However, Cazarez introduced evidence to establish that the stated reason for termination was false. She introduced evidence to establish she was fired on the 7th, before the 3 day rule was violated. The court stated; "Crediting

Cazarez's testimony, as we must, there is some evidence that she did not violate the three-day rule." *Id.* at 451.[2] This was the evidence Cazarez introduced to raise a fact question on whether the stated reason for termination was false. Evidence which does nothing more than show an improper motive does not raise a fact issue on whether the stated reason for discharge is false. It must be evidence which specifically raises a fact question on whether the reason for termination established by the summary judgment evidence is false. *Id.,* see *Texas Division–Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 313–14 (Tex.1994).

Jenkins's proffered evidence does not raise a fact issue on the essential element of his claim which Guardian refuted as a matter of law. There was no job available on the date of the employment decision that Jenkins could perform, and the only accommodations that Jenkins suggested were not reasonable accommodations because they would amount to firing an employee or worker and creating a permanent light duty position that did not currently exist. To avoid a pointless trial, the trial court granted Guardian the summary judgment to which it was entitled. I would affirm the summary judgment as to Guardian.

I concur in the summary judgment as to Charles Hicks for the reasons expressed by the majority.

2. The court went on to discuss other evidence the Court of Appeals improperly relied upon because it was legally justified. *Id.* at 451–452.