

# IN THE
## TENTH COURT OF APPEALS

_____

### No. 10-11-00288-CV

**MATT CLEVINGER,**

                                         **Appellant**

 **v.**

**FLUOR DANIEL SERVICES CORP.,**

                                         **Appellee**

_____

### From the 82nd District Court
### Robertson County, Texas
### Trial Court No. 10-08-18635-CV

_____

## MEMORANDUM OPINION

_____

Matt Clevinger appeals from the trial court's order granting summary judgment in favor of Clevinger's former employer, Fluor Daniel Services Corp. Because the trial court did not err in granting summary judgment, we affirm.

### BACKGROUND

In October of 2008, Clevinger was hired as a welder in the Boilermaker Unit at the Oak Grove Power Plant project for Fluor. This was his second time to work for Fluor at this project. Previously, Clevinger left Fluor to take care of family business and

was subsequently rehired. On March 2, 2009, Clevinger was injured in a job related accident and broke his arm. He returned to work the next day on light duty and later had surgery to repair his arm. Clevinger again returned to work on light duty. By March 25, 2009, Clevinger had hired an attorney to help him file a workers' compensation claim.

In the meantime, Charles Anton, the superintendent for the Boilermaker Unit was told by the construction manager at Fluor to compose a list for a "Reduction of Force." On April 2, 2009, Clevinger was one of 24 employees placed on that list. The next day, Clevinger's immediate foreman, Charles Marshall, told Clevinger that he was being let go.

Clevinger filed a lawsuit pursuant to sections 451.001-.003 of the Texas Labor Code alleging a workers' compensation wrongful termination[1] claim. *See* TEX. LAB. CODE ANN. §§ 451.001-.003 (West 2006). Fluor filed both a no-evidence and a traditional motion for summary judgment. The trial court granted judgment in favor of Fluor without stating upon which motion or ground it relied.

### SUMMARY JUDGMENT

We review the trial court's granting of a motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movant in a traditional summary judgment motion must show that there is no genuine issue of

---

[1] Variations of this word, such as discharge and layoff, are used by the parties, witnesses, and case authority. For consistency in this opinion, we use the word "termination."

material fact and that he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). The granting of a no-evidence motion will be sustained when the evidence offered by the non-movant to prove a vital fact is no more than a mere scintilla. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). When the trial court does not specify the grounds upon which it ruled, the summary judgment may be affirmed if any of the grounds stated in the motion is meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

### WRONGFUL TERMINATION

Sections 451.001-.003 of the Texas Labor Code regulate what constitutes a wrongful termination and what must be proven to establish that the termination was in violation of the Workers' Compensation Act. TEX. LAB. CODE ANN. §§ 451.001-.003 (West 2006). The employee has the burden of proof for a claim under the statute. *Id*. § 451.002(b).

At a trial, an employee must prove that "but for" his filing of a workers' compensation claim, the termination would not have occurred when it did. *See Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 435 (Tex. App.—Waco 2000, pet. denied). The Supreme Court has noted factors which, if proven by the employee, are considered

circumstantial evidence of this "causal link."[2] *Continental Coffee*, 937 S.W.2d at 450-51. These include: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the termination was false. *Continental Coffee Prods. Co. v. Cazarez*, 903 S.W.2d 70, 77 (Tex. App.—Houston [14th Dist.] 1995), *aff'd in part and rev'd in part on other grounds*, 937 S.W.2d 444 (Tex. 1996)).

But, when an employer moves for summary judgment asserting that the employee's termination was unrelated to his compensation claim, the employee has not been called on to produce evidence of the employer's motive. *Alayon v. Delta Air Lines, Inc.*, 59 S.W.3d 283, 288 (Tex. App.—Waco 2001, pet. denied); *Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 441 (Tex. App.—Waco 2000, pet. denied). Only after the employer's summary judgment evidence establishes a legitimate, non-discriminatory reason for the termination, is the employee required to come forward with summary judgment evidence of a retaliatory motive, *i.e.*, the causal link. *See Texas Division-Tranter*

---

[2] The Texas Supreme Court's *Continental Coffee* opinion does not expressly approve the use of these factors. Rather, the Court notes that workers' compensation-retaliatory discharge cases require proof similar to that required in Whistleblower Act cases, and refers to *Texas Department of Human Services v. Hinds*, 904 S.W.2d 629 (Tex. 1995) in both contexts. *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). However, the Court noted that neither of the parties had properly questioned the standard used by the court of appeals and ultimately held that under either the *Hinds* standard or the court of appeals' standard, there was some evidence that the plaintiff was fired in violation of section 451.001. *Id.* at 451. Because the parties in this appeal use the court of appeals' standard from *Continental Coffee*, we will review the summary judgment evidence in light of this standard.

*v. Carrozza*, 876 S.W.2d 312, 313-14 (Tex. 1994); *Alayon*, 59 S.W.3d at 288; *Jenkins,* 16 S.W.3d at 441.  *See also M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000).  The ultimate question will be whether the evidence of a causal link is so strong as to justify a finding that the employer had a retaliatory motive.  *Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 442 (Tex. App.—Waco 2000).

### *Employer's Reason for Discharge*

Fluor alleged in its motion for summary judgment that Clevinger was not terminated because he filed a workers' compensation claim or that he hired an attorney to help him with that claim but was terminated due to a "Reduction of Force."  A reduction of force can be a legitimate, non-discriminatory reason for terminating an employee.  *See McCoy v. Tex. Instruments, Inc.*, 183 S.W.3d 548, 556 (Tex. App.—Dallas 2006, no pet.); *Cox v. NextiraOne*, 169 S.W.3d 778, 781 (Tex. App.—Dallas 2005, no pet.)

Fluor attached as summary judgment evidence its "Notification of Employment Status" which is issued to an employee in compliance with Federal law and Fluor's own Personnel Policy HR-139, Employee Notification for Closings and Layoffs.  This notification informs the employee that employment on a certain project is "considered *temporary* due to the business nature of the construction services industry."  (Emphasis added).  Fluor also attached its "Craft Employee Orientation" for the Oak Grove project.  Included in that orientation is the policy on reduction of force which states that, "[f]actors considered in layoffs *may* include but are not limited to:" expertise,

performance, discipline, project need/remaining scope of work, attendance, and training. (Emphasis added).

Further, Fluor attached the affidavit of its senior human resources manager, Nicholas Carmichael, and the affidavit and deposition of its superintendent of the Boilermaker Unit at the Oak Grove project, Charles Alton. Carmichael stated that he was required to review and sign off on the reduction of force list to make sure proper selection criteria were used in compiling the list. He stated that because his signature was at the bottom of the document, he found that the selection criteria were followed in placing employees, including Clevinger, on the April 3, 2009 "Hourly Workforce Reduction of Force List."

Alton stated that he was responsible for deciding which employees in the Boilermaker Unit to terminate when a reduction of force was necessary. He further stated that in April of 2009 when he was told to make further reductions in the Boilermaker Unit's workforce, he followed the established procedures and selection criteria and considered the projects needs and scope of work and how each employee performed his job. He was personally familiar with the work of each employee and was able to rank the employees without reviewing performance reviews, making notes, or speaking with anyone. He decided to include Clevinger in the April 3, 2009 reduction of force because Clevinger could not perform the essential job functions of a welder. He further stated that, although he knew Clevinger had been injured, he had no knowledge

that Clevinger had filed a workers' compensation claim. By deposition, Alton stated that he thought four welders were cut that day. The reduction of force list, which was included with both affidavits, contained 24 names from the Boilermaker Unit, eight of which were crossed out for various reasons. Their positions were not included in the list.

After reviewing the summary judgment evidence, we find Fluor has established a legitimate, non-discriminatory reason for Clevinger's employment termination. Thereafter, to defeat a summary judgment motion, Clevenger was required to come forward with summary judgment evidence of a retaliatory motive, *i.e.*, the causal link.

*Causal Link*

Fluor asserted in its motion for summary judgment that there was no evidence of a causal link between the filing of Clevinger's workers' compensation claim and his termination. In his response to Fluor's motion, Clevinger asserted that he had evidence of six factors supporting a causal link between his filing of a claim and his termination. These factors are discussed as follows.

*Temporal Proximity[3]*

Clevinger asserts that the "temporal proximity" between his injury and his termination, that being one month, provides evidence of a retaliatory motive by Fluor. It appears from the summary judgment record that there is no dispute that a short

---

[3] Not a *Continental Coffee* factor.

period of time elapsed between Clevinger's injury and his termination. However, the temporal proximity of filing a claim and an employee's termination alone is insufficient to establish a causal link. *See Willis v. Nucor Corp.*, 282 S.W.3d 536, 546 (Tex. App.—Waco 2008, no pet.); *Hernandez v. American Tel. and Tel. Co.*, 198 S.W.3d 288, 293-94 (Tex. App.—El Paso 2006, no pet.); *Porterfield v. Galen Hosp. Corp., Inc.*, 948 S.W.2d 916, 919-20 (Tex. App.—San Antonio 1997, pet. denied).

### *Knowledge of the Compensation Claim*

Clevinger contends that because Charles Alton, the person who made the decision to include Clevinger on the reduction in force list, knew about Clevinger's injury and because Alton spoke with Charles Marshall, Clevinger's foreman, on a daily basis and because Clevinger mentioned to Marshall a couple of times about Clevinger's workers' compensation claim, there is a reasonable inference, thus, some evidence, that Alton had knowledge of Clevinger's workers' compensation claim. This inference is too tenuous. Alton stated in both his affidavit and his deposition testimony that he had no knowledge of Clevinger's workers' compensation claim when Alton placed Clevinger on the reduction of force list. This testimony is not controverted. Further, Marshall testified that Clevinger did not talk about his claim much and Marshall was not asked if he told Alton about Clevinger's claim. Thus, the evidence presented is no evidence that Alton knew Clevinger had filed a workers' compensation claim.

*Negative Attitude*

Clevinger argues that comments by his foreman, Charles Marshall, and Marshall's supervisor, Jamie Graham, evidenced Fluor's negative attitude toward his injury. Clevinger swore in his affidavit in support of his response to Fluor's motion for summary judgment that Marshall told him the decision to terminate Clevinger was "b[]s[]" and that Marshall would not "lie for the company." Clevinger also swore that Graham asked Clevinger a few hours before Clevinger was terminated whether Clevinger had hired a lawyer. When Clevinger replied that he had, Graham allegedly told Clevinger that Fluor would "blackball" him.[4]

Neither Marshall nor Graham played any part in the decision to place Clevinger on the reduction of force list, and their comments are, if anything, "stray remarks." Stray remarks by people not involved in the termination decision are generally insufficient to show discrimination. *See Willis v. Nucor Corp.*, 282 S.W.3d 536, 547 (Tex. App.—Waco 2008, no pet.). *See also M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 25 (Tex. 2000). Further, these alleged statements are not regarding Clevinger's injured condition. Accordingly, they are no evidence of Fluor's negative attitude toward Clevinger's injured condition.

---

[4] Both Marshall and Graham denied having made these statements but based upon our standard of review, we must consider them as having been made. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

*Failure to Adhere to Policies*

Clevinger claims that Fluor's policy regarding a reduction of force directs managers to "Review ROF selection <u>criteria</u> and <u>rank</u> employees based on that criteria <u>only</u>." (Emphasis in Clevinger's Response to Defendant's Motion for Summary Judgment). This statement, without the emphasis, was included at the top of the form reduction of force list. Clevinger relies on Alton's deposition testimony and Graham's deposition testimony to support his proposition that Fluor did not follow this directive. Alton testified that he did not create or look at any selection criteria. The criteria he used were that the job was winding down, that they had to keep the best workers, and that Clevinger was not able to work. Graham testified that he did not know anything about the selection criteria but agreed that the superintendent was to terminate the people that, according to the criteria, were the least needed.

Fluor's written policy on a reduction of force was included in its motion for summary judgment. The policy states that, "[f]actors considered in layoffs may include but are not limited to:" expertise, performance, discipline, project need/remaining scope of work, attendance, and training. Alton's testimony of what criteria he used is included in the performance and project need/remaining scope factors. That there were no official written criteria used nor a written ranking of the employees placed on the list is no evidence that Fluor did not follow its company policies.

*Similarly Situated Employees*

Clevinger argues a causal link is supported by evidence of discriminatory treatment in comparison with similarly situated employees. Specifically, Clevinger asserts that his twin brother was hired by Fluor on the same day to perform the same job at the same plant and was not included in the reduction of force. "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005).

Clevinger points to his own affidavit and Alton's deposition testimony to show that Clevinger and his brother were similarly situated. Clevinger stated that his brother was hired by Fluor on the same day as he was hired, was a welder, and worked at Oak Grove. Alton testified essentially the same: that Clevinger's brother was a welder hired on the same day for the same job at the same plant. Clevinger did not, however, present evidence that his brother was in the same unit, the Boilermaker Unit, and had the same supervisors, Marshall, Graham, and Alton. Because their circumstances were not comparable in all material aspects, Clevinger presented no evidence that he and his brother were similarly situated employees.

Further, Clevinger had a broken arm and was no longer able to perform the full duties of a welder. His brother, on the other hand, did not suffer the same limitations on his performance. Inability to perform the duties of a job is a legitimate reason for

termination even if the inability is a result of a work related injury. *Garcia v. Allen*, 28 S.W.3d 587, 601 (Tex. App.—Corpus Christi 2000, pet. denied).

Finally, Clevinger did not provide any evidence that he was similarly situated to the employees in the Boilermaker Unit that were not terminated at the time that he was terminated. Nor did he provide any evidence how he was different from the other employees that were terminated at the same time that he was terminated. In summary, he provided no evidence that he was treated differently than any similarly situated employee.

### *Stated Reason is False*

Clevinger contends that Flour's stated reason for terminating Clevinger's employment, that it was pursuant to a reduction of force, was false. Clevinger first argues that Fluor hired at least 12 welders at the Oak Grove project during the month Clevinger was terminated and 43 welders in the nine months afterward. Clevinger points to his own affidavit stating that he had learned from his brother that "dozens" of welders had been hired. Clevinger does not say that these welders were hired for the Boilermaker Unit.

Alton testified that the company hired more welders in April of 2009 but that some of them were pipe welders and some may have been hired by a different superintendent from a different "craft." He further testified that he did not hire any other welders for his group. Alton also stated by affidavit that by April of 2009, 60 to

70% of the structural welders had been laid off. On April 2, 2009, the construction manager told Alton he would have to make further reductions in the Boilermaker Unit workforce. Alton thought he terminated four welders that day and cut Marshall back from a foreman to a welder. He further stated that he cut an entire crew that day.

Graham testified that as of April 3, 2009, there were 158 people in the Boilermaker Unit and that he did not supervise all of them. Graham tentatively agreed that less than 10% of the Boilermaker Unit was terminated. He further believed that Fluor had to rehire because of some unscheduled work. Graham, however, did not know why more welders were hired during the year.

The summary judgment record shows that although welders were hired, welders were also terminated. There was a constant flux in hiring and termination. That welders for other crafts, and possibly some boilermaker welders, were hired is no evidence that a reduction of force as a stated reason for terminating Clevinger was false.

Clevinger also claims that Fluor's stated reason was false because Fluor made no effort to contact Clevinger about any of the 43 welding positions later filled at Oak Grove. The summary judgment record shows, however, that Clevinger was not released to full duty status until February of 2010. Further, prior to his placement on the reduction of force list, Clevinger was given an opportunity to weld on a flat surface and would not have to climb ladders. Clevinger declined. Thus, that Fluor did not contact him regarding the other welding positions available in the nine months

following his termination is no evidence that the reason for Clevinger's termination was false.

Clevinger further contends that, because no document was produced stating that the Boilermaker Unit workforce needed to be reduced, Fluor's reason for Clevinger's termination was false. The summary judgment record shows that Alton received a directive from the construction manager to further reduce the Unit. This statement from Alton was not controverted. That there was no documentation to support Alton's statement is no evidence that the stated reason for Clevinger's termination was false.

Lastly, Clevinger argues that because the first two units of the plant were not completed and that if the job was winding down, the 10 hours of overtime that he worked would not have been necessary and is evidence that Fluor's reason for Clevinger's discharge was false. Even if the units were not completed, this is no evidence that the reduction of force in the Boilermaker Unit was not necessary and thus, the reason for Clevinger's termination was false. Further, Clevinger alleged in his petition that he normally worked 65-73 hours and testified that on light duty, he worked five days a week, ten hours a day. There is nothing to suggest that 10 hours of overtime a week is unusual for a welder on light duty at Fluor. That Clevinger worked 10 hours of overtime is also no evidence that the reason for his termination was false.

*Stated Reason-Summary*

Clevinger's summary judgment evidence would only support a suspicion or surmise that his termination could have been because of the workers' compensation claim that he filed or because he had hired an attorney to represent him. As such, it is no more than a scintilla of evidence which is the equivalent to no-evidence. Accordingly, Clevinger has presented no evidence that Fluor's stated reason for Clevinger's termination was false.

## CONCLUSION

Because the summary judgment evidence presented by Clevinger amounts to no evidence of a retaliatory motive by Fluor, the trial court did not err in granting Fluor's no-evidence motion for summary judgment after Fluor presented evidence of a legitimate non-discriminatory reason for Clevinger's termination.

Clevinger's issue is overruled and the trial court's judgment is affirmed.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed April 18, 2012
[CV06]